STATE v. JOSEPH R. BRANCH.

A Judge of the Superior Court has no right to require a grand jury to have the witnesses on the part of the State examined publicly.

CRIMINAL ACTION certified to this Court in obedience to a writ of *Certiorari*, issued upon the petition of the defendant at the last term; an appeal having been refused by *Moore, J.*, at Spring Term, 1872, of HALIFAX Superior Court.

The facts, pertinent to the only question decided in this Court, as alleged in the defendant's petition for a *Certiorari*, and contained in the " case stated," filed by his Honor, and sent up with the transcript of the record, are substantially :

That at Spring Term, 1872, of Halifax Superior Court, an indictment, charging the defendant with having committed an affray, and with an assault on one Spier Whitaker, was sent by the Solicitor to the grand jury. That the said Whitaker and one Hardy were the witnesses sent to, and examined by the grand jury, who, after the examination "offered to return the bill," indorsed, "not a true bill," *which the Court refused to receive.* His Honor ordered the grand

jury to be seated in the jury box, and proceeded to examine in open Court before them, (the grand jury,) Hardy and Whitaker. Upon the evidence of these witnesses, his Honor charged the grand jury, that if the testimony was believed, it was their duty to find a true bill; and that after this. charge from the Court, the grand jury returned the bill indorsed, "A true bill."

The defendant moved to quash the bill of indictment, assigning as ground for such motion, the facts above stated.. His Honor refused the motion, and required the defendant to plead. From this order, the defendant prayed an appeal to the Supreme Court. The Court refused to allow the appeal.

Conigland, and Batchelor & Son, for petitioner.
Hargrove, Attorney General, and Cox, contra.

PEARSON, C. J. We will pass by the objection made to the mode of instituting this proceeding, and also the point that the announcement of their finding by the grand jury, is, in contemplation of law, recorded at the instant it is announced, on the principle, that in a civil action the plaintiff cannot take a non-suit after the jury has announced its verdict, for it is in law recorded eo instanti; and the corollary drawn therefrom, that as the bill has been returned "not a true bill," the same bill, nor a bill charging the same offence cannot be passed on by the same grand jury.

We give no opinion on this corollary, but we can see no objection to the practice, that after an indictment has been returned "not a true bill," the State's Solicitor, upon a suggestion to the Court that he has procured further evidence,. may be allowed to send another bill to the same grand jury,.. charging the same offence.

These points are passed by for the purpose of putting our decision upon the main question, that it to say, has a Judge

the right to require a grand jury to have the witnesses on the part of the State examined publicly ?

There is nothing in our law books, and no tradition of the profession to show that such has ever been the practice or the course of the courts in this State ; and we are of opinion that the ruling of his Honor is an innovation not warranted by the law of the land.

The power of the Judge to require a grand jury to come into open court and have the witnesses for the State examined, is not only opposed to immemorial usage, but is not sustained either by principle or by authority.

The province of a grand jury is, not to try the party, but to inquire whether he ought to be put on trial ; and the purpose is, to save the citizen the trouble, expense and *the disgrace of being arraigned and tried in public on a criminal charge, unless there be sufficient cause for it.* To this end it is provided by the Constitution, "No person shall be put on trial, except upon a bill of indictment found by a grand jury." This provision of the Constitution was aimed at a prerogative of the crown, under pretence whereof a citizen could be put on trial upon a charge of a criminal offense, upon the information of the crown officer, whereby the good citizens were often times exposed to the scandal and disgrace of being tried in public, when, in truth, there was no sufficient cause to suspect their guilt.

Thus it is seen that the purpose of this provision in the Declaration of Rights, is to protect citizens from the scandal and disgrace of being arraigned and put on trial in public, unless there be sufficient ground for it.

How does this innovation upon ancient usage comport with this clause of the Declaration of Rights? It defeats it in *toto.* If the man is to be exposed without inquiry as to the sufficiency of the evidence, to the scandal and disgrace of a trial in public, it may as well be done on the information of the State's Solicitor ; for the protection of a grand

jury amounts to nothing if the citizen is to be first exposed' to scandal and disgrace by a public examination of the witnesses on the part of the State, in order to see whether he ought to be. exposed to the scandal and disgrace of being tried in public on a criminal charge ; and, if upon the public examination of the witnesses for the State, he has no right to cross examine, and no right to offer witnesses to contradict the witnesses of the State, or to prove their bad character, and to be defended by counsel, it would be better for him to have a trial at once, upon information, where he has the right " to confront the accusers and witnesses with other testimony and to have counsel for his defence,"' instead of being, in the first place, put in the condition of a victim tied to a stake, while his reputation is being tortured to death.    If the witnesses for the State are to be examined in public, upon the inquiry of the grand jury, in all fairness the accused should be allowed to cross examine and to offer witnesses to contradict or explain, and to have the benefit of counsel.   So the result would be two trials in public instead of an inquiry and one trial, provided the bill is returned by the grand jury " a true bill."   To avoid this absurdity, his Honor took the other horn of the dilemma, and refused to allow the accused to cross examine, and of course to offer witnesses in contradiction, &c., and "tied the victim to the stake."   He was subjected to bear the disgrace of whatever the witnesses might swear agrinst him, and could not be heard.

In either point of view, this procedure is opposed by the principles of the common law, which means " common sense."

As to authority, the only case cited to support this innovation is that of the *Earl of Shaftsbury*, State Trials, 772.   A perusal of that case will satisfy any one that it ought not to be made a precedent, for the reason, that it was in the time of Charles II., 1181, when the Duke of York, with the coun-

tenance of the King (his brother), had joined the Roman Catholics, and the attempt of the Jesuits to make that "the established religion" was stoutly opposed by the people, and by no others more zealously than the citizens of London, of whom the grand jury was drawn; and who, although compelled to hear the witnesses for the crown examined in public, because "such was the pleasure of the King," were "stout enough" to cross examine the witness for the crown, and after being charged, that it was not their business to pass upon the credit of the witnesses of the crown, (that should be left for the jury of trial,) had the manhood to refuse to find the bill, and to indorse "*ignoramus*"; for which, as the report says, there was such applause and loud cheering that nothing could be heard, and the Judge retired.

This case was never drawn into a precedent in England, and the practice there has ever since been for grand juries in their sessions, which are held in their own room, under an oath, "the State's counsel, your fellows, and your own, you will keep secret," to examine such witnesses as are indorsed on the bill, "sworn and sent," and the return is made, "not a true bill," unless at the least, twelve of the grand jury would convict upon the evidence before them.

There is not the slightest reason to believe that the practice of examining witnesses before a grand jury in public was ever "in force and in use in the colony of North Carolina"; very certainly, such has not been the practice in the State of North Carolina, and it must be rejected as inconsistent with the genius of a republican government. Why examine the witnesses for the State in public, without the right of cross examination and of confronting the witnesses, unless it be to expose the accused to scandal and disgrace, else to browbeat the grand jury and influence "the finding," not in respect to the case, but in respect to the fact?

There is error. This will be certified.

PER CURIAM.                    Judgment accordingly.