## STATE *vs.* MILDRED BREWSTER.

January Term, 1898.

Present: Ross, C. J., Rowell, Munson, Start and Thompson, JJ.

*Indictment—Stenographer in Grand Jury Room.*

An indictment will not be quashed because the State's Attorney, with the consent of the court, is accompanied before the grand jury by a stenographer, who takes down and afterwards transcribes for his use the testimony of the witness, no actual harm to the respondent being shown.

INDICTMENT FOR MURDER. Plea in abatement to the indictment. Heard upon demurrer to the plea, at the September Term, 1897, Washington County, *Tyler*, J., presiding. Demurrer sustained; plea adjudged insufficient, and indictment sufficient. Judgment that the respondent plead over. The respondent excepted and the cause was passed to the supreme court for hearing on the exceptions before final judgment.

It was stipulated that formal and technical defects in the plea and demurrer were and should be waived, and the opinion of the court taken upon questions of substance only.

*Lord & Carleton* and *Frank Plumley* for the respondent, cited, Bish. Crim. Proc. § 862 and Thomp. and Mer. on Juries § 629; *Lewis* v. *County*, 74 N. C. 198; *U. S.* v. *Reed*, 2 Blatchf. 435; *Lung's Case*, 1 Conn. 428; *Shattuck* v. *State*, 11 Ind. 473; *State* v. *Watson*, 34 La. An. 669; *State* v. *Justus*, 11 Oregon, 178; *Blevins* v. *State*, 68 Ala. 92; *Rothschild* v. *State*, 7 Tex. App. 537; *Burrell* v. *State*, 16 Tex. 149; *State* v. *Addison*, 2 So. Car. (N. S.) 356; *State* v. *McNinch*, 12 S. L. 89; *U. S.* v. *Kilpatrick*, 16 Fed. Rep. 765; *Wilson* v. *State*, 13 So. Rep. 225; *U. S.* v. *Simmons*, 46 Fed. Rep. 65; *People* v. *Sellick*, 4 N. Y. Crim. Rep. 329; *Welch*

v. *State,* 68 Miss. 341; *State* v. *Bowman,* (Me.) 38 Atl. Rep. 331; *State* v. *Clough,* 49 Me. 573; *King* v. *Earl of Shaftesbury,* 8 How. St. Tr. 759; *People* v. *Ah Chung,* 54 Cal. 398; *Lawrence* v. *Com.,* 86 Va. 573; *State* v. *Kimball,* 29 Iowa 267.

*Fred A. Howland,* State's Attorney, for the State, cited, 1 Chitty, Crim. Law 316–318; *Reg.* v. *Hughes,* 1 C. & K. 518; Thomp. and Mer. on Juries §§ 623, 631; *Little* v. *Com.,* 25 Gratt. 921; 3 Russell, Crimes, 594, 595; 1 Bish. New Cr. Proc. § 857; Clark, Cr. Proc. 113; Proffatt, Jury Tr. § 57; *U. S.* v. *Simmons,* 46 Fed. Rep. 65; *U. S.* v. *Reed,* Blatchf. 455; *Hurtado* v. *People,* 110 U. S. 516: 1 Reeves, 2 Hist. Eng. Law 461; 4 Black. Com. 126, N. 5; *Com.* v. *Mead,* 12 Gray 167; 1 Green. Ev. § 252; Note to *Com.* v. *Green,* 12 Am. St. Rep. 894; 2 Taylor, Ev. § 942; 8 Cr. Law Mag. 711; 3 Rice, Ev. 255; *State* v. *Bates,* 48 N. E. Rep. 2; *Bennett* v. *State,* (Ark.) 36 S. W. Rep. 946; *Com.* v. *Bradney,* 126 Pa. St. 205; *U. S.* v. *Terry,* 39 Fed. Rep. 355; *State* v. *Bartlett,* 11 Vt. 650; *State* v. *Newfane,* 12 Vt. 422; *State* v. *Davidson,* 12 Vt. 300; *State* v. *Brainerd,* 56 Vt. 532; *State* v. *Gravelin,* referred to in *State* v. *Ward,* 60 Vt. 142; *State* v. *Cox,* 52 Vt. 473; *State* v. *Champeau,* 52 Vt. 313.

Ross, C. J. We have considered the respondent's plea in abatement of the indictment, as we are requested to by the counsel of both parties, upon the substantial allegations therein, and without considering whether the technical rules applicable to such pleas have been violated or complied with. The substantial facts therein alleged are, that the State's Attorney, with the consent of the court and of the grand jury, took his stenographer with him into the grand jury room, while they were receiving the testimony upon which they found the indictment; that she there took down, in short hand, the full testimony of the witnesses as they were examined, and has since written it out, or type-written

it, for the use of the State's Attorney; that she was not present when the grand jury were consulting, or deliberating, nor voting, upon the case against the respondent. It is not alleged that her presence or action in any way influenced the action of the grand jury, either for or against the respondent, in finding the indictment. The single question thus presented for consideration is: Does this action of the State's Attorney, the presence and taking of the testimony by his stenographer, with the consent of the court, and her subsequent transcription of the testimony for the use of the State's Attorney, any one or all of them, furnish a lawful reason for abating the indictment? In considering this question, it must be borne in mind, that, if the constitution of the State recognizes the necessity for prosecutions of the higher crimes to be instituted by indictment by the grand jury, it has no provision touching, nor regulating, the proceedings before the grand jury. The statutes of the State provide for the selection, return and impaneling of the grand jury at certain terms of the county court; for their charge by the presiding judge; for the appointment of their foreman by the court; the form of the oath to be administered to them and to the sheriff who attends upon them; and for their indorsement and return into the court of the bills or indictments found, and not found by them. The statute also provides that the State's Attorney of his county may prosecute by information all crimes except those which are punishable by death or by imprisonment in the state prison more than seven years, and that no person shall be held to answer in court for an alleged crime, or offense, unless upon indictment, except where a prosecution by information is authorized. It also provides that the grand jury shall consist of a body of eighteen, the concurrence of twelve of whom is necessary for the finding of an indictment. There is also a statute which adopts as the law of the state so much of the common law of England as is applicable to the local situation and circumstances, and not repugnant to the constitution or laws.

It is thus manifest, that the method of procedure by and before the grand jury is that pointed out in the oath administered to them, in the statutes, so far as any exist, and such as obtained at the common law, not inconsistent with the provisions of the statute law. There is no statutory provision for the appointment of a clerk, to keep a record of their proceedings, by the grand jury. Under the common law, the grand jury usually had a clerk, in some way, appointed to keep a record of their proceedings. Being a part of a court of record it is advisable that a record of their proceedings should in some manner be provided for. It has been customary for the judge in his charge to direct them to appoint a clerk from their own number to keep such a record. Such a record has usually, if not invariably been kept, showing both what matters were inquired into, the witnesses examined on each matter, the substance of their testimony, and the action of the grand jury thereon, as to whether the bill was found or not found. This record has been passed to the clerk of the court to be kept by him for the use of the State's Attorney of the county; and for the use of subsequent grand juries, that they might know what matters their predecessors had inquired into. It is not required by statute, and has not been the custom, to indorse upon the indictment the names of the witnesses upon whose testimony it is found.

By V. S. 2955, "State's Attorneys in their respective counties shall prosecute for offenses committed therein, and all matters and causes cognizable by the supreme or county court, in behalf of the State; file informations and prepare bills of indictment," etc. This statute has been in force since 1787. Under it, by direction of the court, in its charge to the grand jury, the State's Attorney has uniformly attended the sessions of the grand jury, laid before them such matters as had come to his knowledge which needed to be inquired into by them, summoned and examined the witnesses, and prepared and presented indictments for them to act upon.

He has sometimes been present when they have voted, and sometimes not. No oath is taken of him, except his oath of office and oath of attorney, which last binds him to be faithful and true to the interests of his client, the State. The grand jury have been usually charged that they should not allow any other attorney to appear before them without an order from the court. Such order has usually been given when the State's Attorney was disqualified in any matter, or for any reason unable to be present and examine the witnesses. They have been told that they could inquire of the court in open court, or at their room, in regard to any question of law about which they wished to be informed. Their foreman is authorized by statute to administer the oath to the witnesses, and the witnesses are uniformly sworn in the grand jury room. No oath is required of them except the oath usually administered to witnesses. If they are restrained at all, from stating publicly or to the accused, that they have been used as witnesses, and the substance of their testimony, it is not because of the oath administered, but because such action would be a contempt of the court, because of the secrecy required by the oath of the grand jury. The oath of the grand jury on this point reads, "The counsel of the State, your own counsel and that of your fellows, you shall keep secret." The oath to the officer attending them, binds him to "keep their counsel and that of the State," and "not disclose anything relative to their proceedings." The grand jury usually have been instructed that they should never disclose what any one of their number counseled in regard to any matter before them; that they should not disclose what the matter being investigated by them was, nor who the accused might be, until he was duly arrested, nor, in case complaint was made by a private complainant, should they ever disclose his name. The reasons usually given for the requirement that he should keep secret his own counsel and that of his fellows, are, freedom from fear of incurring the

hatred of the accused, or his friends and witnesses; and freedom in expression of his views in regard to the matters under consideration; and that he should not disclose the name of the complainant, that there might be freedom to complain, by all persons who knew of an infraction of the criminal law. This complaint is made, generally, through the State's Attorney, but sometimes directly to the grand jury. It is to be observed that the oath administered to the grand jury in regard to secrecy is different from what it is in Connecticut, and some of the other states, in which the oath reads: "The secrets of the *cause,* their own and their fellows, they will duly observe and keep." *State* v. *Hamlin,* 47 Conn. 95: 36 Am. Rep. 54. I do not remember of ever hearing a judge in his charge give as a reason why the grand jury should not disclose who were witnesses before them, nor what their testimony was, that such disclosure might furnish the accused, or his friends, an opportunity to suborn witnesses to contradict and do away with, the testimony of the State. We are aware that this reason is given for not disclosing the testimony of the witnesses given before the grand jury, by eminent law writers and judges. Mr. Greenleaf, § 252, Vol. 1, of his work on Evidence, says this may be a reason. Query, if this does not in advance discount the presumption of innocence which attaches to and attends every accused until his crime is established. At common law, for one of the grand jury to disclose to any person indicted the evidence that appeared against him, made him guilty as accessory, early, and, later, of a high misprision. 4 Black. Com. 126: 1 Chitty Crim. Law 317. Another reason sometimes given for their proceedings being kept secret is that it may not be known that complaint and inquiry have been made against parties who were not indicted.

At the common law the witnesses were usually sworn in open court, and sent to the grand jury to give their testimony. Such was the practice generally where the

common law prevailed, until the foreman of the grand jury was authorized by statute to administer the oath to witnesses. But, at common law, where the accused was under arrest, the examination of witnesses was sometimes in open court, before the grand jury. Mr. Chitty *supra*, p. 312, in regard to the proceedings before the grand jury, in quarter sessions, at common law, says: "When the charge is concluded, the recognizances to prosecute and give evidence are then called, so that bills may be drawn and prepared; which being ready, the parties bound to give evidence upon them, are sworn, and sent to the grand jury to give their evidence to them, in the room to which they have retired, though it is said, that if the matter be weighty or difficult, or if it appear that the prosecution is too indulgently·or too vindictively conducted, the evidence may be heard in court, so that the jury may be better assisted in the performance of their duty. He cites in support of this, Dalt. J. c. 185, § 9; 3 Harg. St. Tr. 417; 4 Black. Com. 303, n. 1; 2 Hale 159, 160; Hawk b. 2, c. 25, § 145, in notes; Jac. Dic. Grand Jury. See also Proffatt on Jury Tr. § 55.

While it is generally held, that except for the purposes of justice, in prosecutions for perjury, and to impeach witnesses on the trial, the grand jurors, and others rightfully there, are bound to keep secret what transpires in the grand jury room, the foregoing shows that so far as relates to the names of the witnesses, and their testimony, the requirement of secrecy was, for the greater part, for the benefit of the State, and that the State, through the court of which the grand jury are a part, could waive the requirement and cause the witnesses to be examined in open court. It may be doubted whether such examination, in all cases where the accused is under arrest, would not bring better results, better protect the State against the escape of the guilty, and better protect the innocent from unjust prosecution; whether it would not make the grand jury more careful, by impressing upon them more keenly their responsibility to

the public for their action; and whether witnesses before them would not be more careful in giving their testimony. However this might be, the practice in this State, for more than one hundred years, has allowed the clerk and the State's Attorney to take such minutes as they were able to take of the testimony of witnesses, for future use. Either, if able, by short hand, could take the full testimony and extend it at pleasure for future use. It may be that their duty under the law would restrain them from divulging such testimony to the public, or to the accused. But on the presumption, which exists until the truth of the charge is fully established by the verdict of the traverse jury, of the innocence of the accused, why should he not have an equal opportunity with the State to know and to prepare to meet, contradict and explain the testimony brought against him? If the clerk, or State's Attorney, if versed in the art, had the right to take down all the testimony given before the grand jury, and extend it for future use by the State, how can the respondent claim that the indictment should be abated, because it was taken by the clerk and servant of the State's Attorney, rather than by his own hand? We are aware that the decided cases in courts of last resort in this country are not in accord in regard to this question. In very many of them, especially in the code states, the proceedings by the grand jury, who shall be present, and what the effect shall be upon the indictment if the prescribed proceedings are not complied with, are provided for by statutes. The decisions of these states can furnish but little aid in a state like ours, where the proceedings have been left to the control of the common law, applied to our circumstances and condition, modified in some respects by statute.

In United States district and circuit courts it is generally held that the district attorney may take his stenographer with him before the grand jury to take down for him the testimony there given. Such stenographer is held to be the assistant of the district attorney, under pay from the United

States.  *U. S.* v. *Simmons,* 46 Fed. R. 65.  It is there said: "It is a settled practice for the clerk and assistants of the district attorney to attend the grand jury, to assist in investigating the accusations presented before them," citing a note in Brightley's Digest, p. 209; *U. S.* v. *Kilpatrick,* 16 Fed. Rep. 765.  Yet the proceedings in the U. S. courts are controlled to a considerable extent by the common law. *U. S.* v. *Reed,* 2 Blatchf. 435.  The cases of *Courtney* v. *State,* (Ind.) 32 N. E. Rep. 335, and *State* v. *Bates,* (Ind.) 48 N. E. Rep. 2, are direct authorities for holding that the irregularity claimed to exist in this case should not abate the indictment.  In the first case, the court places its decision on the common law doctrine.  The only case directly in point holding the opposite doctrine is *State* v. *Bowman,* in Maine, decided June 1, 1897, found in 38 Atl. Rep. 331.  This court places some stress upon the fact that the county court, without authority, had appointed the stenographic reporter in the case.  It is to be observed that the court of that state has abated indictments for causes which do not avail in most other jurisdictions.  In *Low's Case,* 4 Green. 439: 16 Am. Dec. 271, it allowed the grand jury, by the testimony of its individual members, to show that the indictment had not been found by twelve of their number, against the record, "a true bill" endorsed thereon by the foreman, and the return of the indictment so endorsed by the grand jury, in a body, into the court.  It is generally held that the grand jurors are not competent witnesses to such fact, from public policy.  See note to that case in 16 Am. Dec. *supra.*  *Gitchell* v. *People,* 146 Ill. 175: 37 Am. St. Rep. 147; *Jenkins* v. *State,* 35 Florida 737: 48 Am. St. Rep. 267; *Com.* v. *Green,* 126 Pa. St. 531: 12 Am. St. Rep. 894, and an extended note.  In *State* v. *Clough,* 49 Me. 573, the court quashed an indictment, apparently, because some of the grand jury finding it were irregularly selected and returned.  It is generally held that irregularities in the selection and return of persons qualified to act as grand

jurors, when duly present in court, sworn and charged, will not abate the indictment; but if the person is disqualified from acting as a grand juror under any circumstances his presence and participation in finding the indictment—though he is sworn and charged — is a cause for quashing the indictment. The great weight of authority holds that if the juror answers the demands of the law, and is duly sworn and charged, the indictment is valid although an irregularity has intervened in selecting and returning him. This court so held in *State* v. *Champeau*, 52 Vt. 313, and in *State* v. *Ward*, 60 Vt. 142. So it is generally and almost universally held, that, for an irregularity in the proceedings of the grand jury to avail a respondent to abate the indictment, he must aver and show that the irregularity has been directly to his prejudice. As bearing upon this subject of abatement of indictments, directly and indirectly, besides the cases heretofore cited, see the following, many of which are from states where the decision is controlled by the provisions of the code of the state, and many of which bear only indirectly upon the question under consideration. *Rothschild* v. *State*, 7 Texas 537; *Welch* v. *State*, 68 Miss. 341; *Com.* v. *Barding*, 126 Pa. St. 197; *Bennett* v. *State*, 62 Ark. 517; *State* v. *Baker*, 33 W. Va. 319; *State* v. *Addison*, 2 So. Car. N. S. 356; *State* v. *Justus*, 11 Oregon, 178; *State* v. *McNinch*, 12 S. C. 89; *People* v. *Sellick*, 4 N. Y. Crim. R. 329; *State* v. *Watson*, 34 La. An. 669; *State* v. *Kimball*, 29 Iowa 267; *Reg.* v. *Hughes*, 47 E. C. L. 518; *Com.* v. *Mead*, 12 Gray 167; *Shattuck* v. *State*, 11 Ind. 473; *U. S.* v. *Terry*, 39 Fed. R. 355; *State* v. *Fertig*, (Iowa) 67 N. W. Rep. 87; *Com.* v. *Brown*, 147 Mass. 585: 9 Am. St. R. 736; *Com.* v. *Woodward*, 157 Mass. 516: 34 Am. St. R. 302; *Com.* v. *Hayden*, 163 Mass. 453: 47 Am. St. R. 468; *Sate* v. *Noyes*, 87 Wis. 340: 41 Am. St. 45: 9 Am. and Eng. Ency. of Law, title Grand Jury; *State* v. *Davis*, and note, 12 R. I. 492: 34 Am. R. 704; *State* v. *Hamlin*, 47 Conn. 95: 36 Am. R. 54; *Gibbs* v. *State*, 45 N. Y. 379: 46 Am. R. 782.

An examination of these decisions will make it clear, so far as observed, that the presence of a stranger in the room with the grand jury, when receiving the testimony of witnesses, with the exception of *State* v. *Bowman, supra,* is never a cause for abating their indictment, unless the respondent avers and shows that he has been prejudiced thereby; and rarely will such presence when the jury are deliberating or voting, avail, unless the respondent is shown to have been prejudiced thereby in respect to the finding of the indictment. The decisions of this court—*State* v. *Jenkins,* 2 Tyler 384; *Baldwin's Case,* 2 Tyler 473; *State* v. *Bartlett,* 11 Vt. 650; *State* v. *Davidson,* 12 Vt. 300; *State* v. *Newfane,* 12 Vt. 422; *State* v. *Cox,* 52 Vt. 473; *State* v. *Champeau,* 52 Vt. 313; *State* v. *Brown,* 31 Vt. 602; *State* v. *Brainard,* 56 Vt. 532; *State* v. *Emery,* 59 Vt. 84; *State* v. *Ward,* 60 Vt. 142—all are to the effect that no technical irregularity in selecting, drawing or impaneling the grand jury, if they are men qualified by law to act as grand jurors, nor in their proceedings when duly impaneled, will avail a respondent, unless he shows that such irregularity has been prejudicial to him. They have gone as far, if not farther, than most courts in holding indictments valid against technical irregularities. When it is considered that an indictment determines no more than that the respondent should be put upon trial, it is apparent that nothing but such an irregularity as is shown will and does prejudice the accused, should avail to abate the indictment. The court should not act upon a conjecture that it might have prejudiced him. It must be shown to have prejudiced, or be of such a character as would naturally prejudice his rights. Certainly no stricter rule should be applied in abating an indictment for such causes than is applied to set aside the verdict of a jury. The rule stated is the one this court has applied to setting aside verdicts of the jury. *Briggs* v. *Georgia,* 15 Vt. 61; *Mann* v. *Fairlee,* 44 Vt. 672; *Quinn* v. *Halbert,* 52 Vt. 353; *Kelley* v. *Downing,* 69 Vt. 266.

It is contended, that the act of taking the testimony of the witnesses in full would impress the grand jury with the idea that an indictment was expected to follow. This is no more than conjecture. If it should give that impression, the jury are still left free to weigh and to declare the weight of the testimony by their findings.

In this review of the decisions of this State, and of the decisions of other courts, this court is to be understood as deciding no more than that the irregularities shown in this case, under all the circumstances set forth in the plea, are insufficient to abate the indictment. The ends of justice are always best accomplished when the proceedings are strictly in accordance with the provisions of the statute and well recognized proceedings of the common law. Much care should be exercised that no irregularities should be able to intervene in any proceeding touching the life and liberty of the citizen.

> *Judgment, there is no error; that the demurrer is sustained; that the plea in abatement is insufficient, and cause remanded.*