# Commonwealth, Appellant, *v.* Hegedus.

*Criminal law—Quashing indictment—Appeals.*

1. The quashing of an indictment for error of law apparent in the record may be reviewed and reversed on appeal.

*Criminal law—Grand jury—Unauthorized person in grand jury room—Stenographer.*

2. The mere presence in the grand jury room of a stenographer employed by the district attorney under the authority of the Act of April 27, 1909, P. L. 258, "as an assistant in his office," for the purpose of taking down in shorthand for the use of the district attorney the evidence upon which an indictment is returned, does not invalidate the indictment in the absence of anything tending to show that he was present when the grand jury deliberated or voted upon the bill, or that he participated in the proceedings in any other way than by taking notes of the testimony, or that the accused was injuriously affected thereby.

Argued March 9, 1910. Appeal, No. 28, March T., 1910, by plaintiff, from order of Q. S. Lackawanna Co., Oct. T., 1909, No. 278, quashing indictment in case of Com. v. Mike Hegedus. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Indictment for assault and battery.

Demurrer to motion to quash indictment. Before NEWCOMB, J.

The case turned on whether the district attorney had the right to have his official stenographer with him before the grand jury for the hearing of testimony for the purpose of taking notes of the evidence of the witnesses.

The court in an opinion by NEWCOMB, J., relying on Com. v. Kositchy, 17 Pa. Dist. Rep. 778, quashed the indictment.

*Error assigned* was order quashing the indictment.

*David J. Reedy,* assistant district attorney, with him *Joseph O'Brien,* district attorney, for appellant.—It was

the practice in certain courts at common law for some one connected with the court to be present with the grand jury when evidence was being given for the very purpose of seeing that the witnesses testified as they had before the binding-over magistrate: Reg. v. Hughes, 1 Car. & K. 519.

The prosecuting attorney may, and should attend before the grand jury while they are receiving evidence, and may assist in the examination of witnesses; and he may be accompanied by his stenographer: Profatt, Jury Trial, sec. 57; United States v. Simmons, 46 Fed. Repr. 65; 1 Bishop New Crim. Proc., sec. 861; United States v. Reed, 2 Blatchf. 435.

The secrecy of the grand jury room was for the protection of the state, not the respondent: 1 Reeves, History of Eng. Law; Huidekoper v. Cotton, 3 Watts, 56.

In the case of State v. Brewster, 70 Vt. 341 (40 Atl. Repr. 1037), this identical question was before the court, and it was there held, "an indictment will not be quashed because the State's attorney, with the consent of the court, is accompanied before the grand jury by a stenographer who takes down and afterwards transcribes for his use the testimony of the witnesses, no actual harm to the respondent being done." See also State v. Bates, 148 Ind. 610 (48 N. E. Repr. 2); People v. Lauder, 82 Mich. 109 (46 N. W. Repr. 956).

No printed brief for appellee.

OPINION BY RICE, P. J., October 10, 1910:

The Act of April 27, 1909, P. L. 258, provides that the district attorney of any county which shall have less than 250,000 and more than 110,000 inhabitants may employ a stenographer "as an assistant in his office" at a salary not to exceed the sum of $1,200 per year, to be paid in the same manner as the salaries of other county officers are paid. Lackawanna county belongs to this class of counties, and the question for decision is whether

the fact that the stenographer employed by the district attorney under this act attended before the grand jury and took stenographic notes of the testimony of all of the witnesses who were examined upon the bill and transcribed the same in longhand for the use of the district attorney was legal cause for quashing the indictment, in the absence of allegation or proof that he was present when the grand jury deliberated or voted upon the bill, or that he participated in the proceedings in any other way than by taking notes of the testimony. The facts were brought upon the record by demurrer to the defendant's motion, and it is apparent from the record as thus made up, as well as from the opinion of the learned judge of the quarter sessions, that the order quashing the indictment was not based upon a finding that the defendant was actually prejudiced by the presence of the stenographer during the examination of the witnesses or by his taking notes of their testimony, but upon the ground that these acts in and of themselves and irrespective of the question whether or not they produced any prejudicial effect entitled the party indicted, as matter of legal right, to have the indictment quashed. The decision is important because it is declarative of a rule of law that, if applicable here, would be applicable and controlling in every case in which the same facts appeared. Whilst it is true that a motion to quash a bill for matters dehors the record is addressed to the discretion of the court, a discretion regulated by judicial rule, and it is also true that according to the practice in some jurisdictions the decision is not open to review in the higher courts, yet in Pennsylvania the practice is otherwise and it is well settled that for error of law apparent in the record the quashing of an indictment may be reviewed and reversed on appeal: Com. v. Bradney, 126 Pa. 199; Com. v. New Bethlehem, 15 Pa. Superior Ct. 158. The same has been held in cases where the motion to quash was denied: Com. v. Hall, 23 Pa. Superior Ct. 104; Com. v. Edmiston, 30 Pa. Superior Ct.

54. It is therefore incumbent on us to consider the legal sufficiency of the reason for which, as the record shows, the indictment was quashed.

A part of the oath administered to grand jurors in Pennsylvania is, "the commonwealth's counsel and your own to keep secret," and, subject to certain qualifications about to be alluded to, it is the modern practice, founded on principles of public policy, for grand juries to conduct their investigations and deliberations upon bills submitted for their consideration in secret. The following statement by Professor Greenleaf of the reasons for the rule as to secrecy is recognized in many well-considered cases, and other text-writers state them in substantially. the same way. "One reason may be, to prevent the escape of the party should .he know that proceedings were in train against him; another may be to secure freedom of deliberation and opinion among the grand jurors, which would be impaired if the part taken by each might be made known to the accused. A third reason may be to prevent the testimony produced before them from being contradicted at the trial on the indictment by subornation of perjury on the part of the accused:" 1 Greenleaf's Ev. (15th ed.), sec. 252. Having regard to the generally accepted reasons for the rule, it is seen that the requirement of secrecy is mainly for the benefit of the sovereign or state, and at one stage of the common law of England it was held that the sovereign might waive it: 4 Blackstone's Com. (Lewis' ed.), 126, note by Christian. It would seem from what was said in Regina v. Hughes, 1 Car. & Kir. 519, that it was at one time the practice in certain courts of England for some one to be present with the grand jury when evidence was being given, for the purpose of seeing whether the witnesses testified as they had before the committing magistrate. So in State v. Brewster, 70 Vt. 341, 42 L. R. A. 444, it is shown by quotations from Chitty's Criminal Law, p. 312, that the practice was recognized in certain classes of cases of hearing the evidence in court so that the grand

jury might be better assisted in the performance of their duty. The learned author cites several authorities in support of this statement. A notable case where this practice was followed was that of the Earl of Shaftesbury. The counsel for the crown applied that the witnesses in support of the indictment might be examined before the grand jury in open court. The foreman reminded the court of the oath which he and his fellows had taken to keep the king's counsel secret; but the judges told him that the king might dispense with secrecy and disallowed the objection. The witnesses were accordingly openly examined, but the grand jury returned the bill "ignoramus:" 8 St. Tr. 759–821; Forsyth's History of Trial by Jury, 224. There is one reported case in which this practice was followed in this country, but there it was condemned and set aside on writ of error, and it is believed that the taking of testimony upon bills in public, even in exceptional cases, would not now be allowed: State v. Branch, 68 N. C. 186; Bishop's New Crim. Procedure, sec. 861; Edwards' The Grand Jury, 117. We do not cite the old English cases above referred to as precedents that may be followed in Pennsylvania. They are interesting historically, however, and tend to show that in its origin the requirement of secrecy was deemed essential for the benefit and protection of the crown rather than the accused. And even at this day it is not held so sacred as to hamper the commonwealth in the prosecution of offenses against the criminal law. Although in some jurisdictions the prosecuting attorney is not allowed in the grand jury room, the general rule is, that he may be present before the grand jury to assist in the examination of witnesses, to advise it as to the admissibility of evidence and the proper mode of procedure, and to give general advice on questions of law: 20 Cyc. of Law Procedure, 1338. The general rule prevails in Pennsylvania. "The district attorney is the attendant of the grand jury; it is his duty as well as his privilege to lay before them matters upon which they are to pass, to aid

them in the examination of witnesses, and to give them such general instructions as they may require. But it is his duty during the discussion of the particular case, and whilst the jurors are debating upon it, to remain silent. It is for the jury alone to consider the evidence and apply it to the case in hand; any attempt on the part of the district attorney to influence their action or to give effect to the evidence adduced, is in the highest degree improper and impertinent:" Com. v. Bradney, 126 Pa. 199. As the district attorney may be present during the examination of witnesses, it must be conceded that he may make such notes of their testimony as he is able, and, if versed in the art, may take the entire testimony stenographically and transcribe it in longhand for future use. In a prior case involving the same question the. learned judge who rendered the decision in the present case well said: "So far as concerns the intended use of the evidence, we fail to see how that in itself lends any weight to the motion. There is nothing to prevent the district attorney from noting the evidence, and if he were able to make complete notes, we can think of no reason why he cannot properly do so for his own advantage in the further preparation and conduct of the case:" Com. v. Kositchy, 17 Pa. D. R. 778. The same view is taken in State v. Brewster, and it does not seem to be open to question. It logically follows that if the order quashing the indictment is to be sustained it must be on the ground, and this alone, of the presence of the stenographer during the giving of the evidence. In considering this as a cause for quashing, it is to be observed that he was not a mere intermeddler, but was a person appointed by the district attorney, by express statutory authority, "as an assistant in his office" and was present to assist the district attorney, and for no other purpose. It is true he was not an assistant district attorney; the scope of his employment was limited by plain statutory implication to the rendering of such services as stenographers usually render. But the statute does not in ex-

press terms exclude from the scope of his duties the rendering of stenographic assistance to the district attorney in the grand jury room, and the generality of the language of the statute furnishes ground for plausible argument, at least, that the intention of the legislature was to enable the district attorney to require of him that kind of service wherever in the performance of his duties as district attorney such assistance should become necessary. Let us suppose, however, that the district attorney had not the absolute right to take his stenographer with him into the grand jury room. Does it necessarily follow that this act alone vitiated the indictment? A perusal of many cases from different jurisdictions shows that the mere presence of an unauthorized person in the grand jury room during the taking of testimony, although an irregularity, is not necessarily and under all circumstances fatal to the indictment; it depends, according to these authorities, upon the circumstances of the particular case. Many of these cases are cited in the opinion in State v. Brewster, 70 Vt. 341, and in Bishop's New Crim. Procedure, sec. 861. In the latter work, after pointing out that the presence of persons not of the grand jury at the giving of the evidence appears to be deemed less objectionable than their presence at the deliberations thereon, the learned author says: "Yet if while the evidence is being given a third person not participating is present under no suspicious circumstances—as, a bailiff, or one drawn as a grand juror not in due form—the indictment will not be abated. Such person is under the same obligation of secrecy with the jurors." So, in 20 Cyc. of Law & Pro. 1340, it is said, "but since officers are usually in attendance upon grand juries, and in the performance of their duties it is often necessary for them to enter the grand jury room, the mere fact that an officer is present during the examination of witnesses or even during the deliberations of the grand jury will not vitiate an indictment in the absence of proof that he influenced or attempted to influence the

jury in making its findings." The text is supported by State v. Kimball, 29 Iowa, 267; Richardson v. Com., 76 Va. 1007; State v. Bacon, 77 Miss. 366. The same has been held with regard to the presence of an interpreter: Fletcher v. Com., 123 Kentucky, 571. The principle that the mere irregularity of the presence of an unauthorized person is not necessarily fatal is recognized in Com. v. Bradney, 126 Pa. 199. After discussing the authority of the district attorney to be present at the taking of testimony, in the language heretofore quoted, Mr. Justice CLARK said: "Indeed, it is the better practice, and the jurors have an undoubted right to require, that he should retire from the room during their deliberations upon the evidence and when the vote is taken whether or not an indictment shall be found or a presentment made. In the absence, however, of any participation in the deliberations of the jury or effort on his part to influence their finding, we do not think that the mere presence of the commonwealth's officer in the jury room would be good ground for quashing a bill; no case has been called to our attention which carries the rule to this extent." We venture the opinion that the mere presence of the district attorney during the deliberations of the grand jury and their voting on the bill is an act which viewed abstractly is more likely to influence the grand jury than the mere presence of a stenographer in the performance of his clerical duties to the district attorney during the taking of testimony. If the former act does not per se vitiate the indictment, it is difficult to see upon what sound principle it can be laid down as an inflexible rule of law that the latter act is fatal, where there is no ground for suspicion even that it was actually prejudicial to the accused. The fact that no Pennsylvania precedent can be found in the books where such practice has been approved or held not to be cause for quashing is not conclusive of the question: Mifflin v. Com., 5 W. & S. 461; Com. v. McHale, 97 Pa. 397. Its flexibility and capacity for growth and adaptation are the peculiar boast and ex-

cellence of the common law: Hurtado v. People of California, 110 U. S. 516. Common-law procedure would not be what it is to-day were it not for innovations that have been made from time to time. While the precise question does not seem to have been ruled upon in the appellate courts of Pennsylvania, it has arisen in other jurisdictions and been thoroughly considered in the light of common-law principles. The able opinion of the court in State v. Bowman, 90 Me. 363, sustains the conclusion reached by the learned judge of the quarter sessions in the present case. But State v. Bowman stands practically alone. The contrary view is taken and ably supported in State v. Brewster, 70 Vt. 341, 42 L. R. A. 444; State v. Bates, 148 Ind. 610; Courtney v. State, 5 Ind. App. 356; State v. Sullivan, 110 Mo. App. 75; Sims v. State (Tex.), 45 S. W. Repr. 705; U. S. v. Simmons, 46 Fed. Repr. 65; 20 Cyc. of Law & Pro. 1341; 17 Am. & Eng. Ency. of Law (2d ed.), 1293. Without prolonging this opinion by a review of the cases above referred to, it is enough to say that the great weight of authority supports the conclusion that the mere presence in the grand jury room, of a stenographer employed by the district attorney, by express statutory authority, "as an assistant in his office," for the purpose of taking down in shorthand, for the use of the district attorney, the evidence upon which an indictment is returned, does not invalidate the indictment, in the absence of anything tending to show that he was present when the grand jury deliberated or voted upon the bill, or that he participated in the proceedings in any other way than by taking notes of the testimony, or that the accused was injuriously affected thereby.

The result of our examination of the question has led us to the conclusion that the rule as thus guardedly stated is sound in principle and is not in conflict with any technical rule of the common law in force in Pennsylvania.

The order is reversed, the indictment is reinstated and the record is remitted with a procedendo.