# The People of the State of Illinois, Defendant in Error, v. John E. Hartenbower et al., Plaintiffs in Error.

## Gen. No. 6,327.

1. Indictment and information, § 54*—*discretion of court as to compelling election of counts and time of election.* In the particular case it was held that it was entirely within the sound discretion of the trial court to compel the People, on motion of defendant, to elect under which counts of an indictment they would ask defendant's conviction, as well as the time when such election should be required.

2. Indictment and information, § 59*—*what is not ground for quashing indictment.* The presence in the grand jury room of a certain attorney not regularly appointed as assistant to the State's Attorney but assisting the latter and under his direction and supervision questioning the witnesses as to certain facts of which he had special knowledge by reason of having been attorney for the receiver of the bank, the embezzlement of whose funds the grand jury were considering, but who was not present in the grand jury room at any time when the grand jury were deliberating upon the case or discussing questions pertaining to the finding of an indictment, or when any vote was taken, and who was not shown guilty of any improper conduct while so engaged or in the room, *held* to be insufficient legal basis for quashing the indictment.

3. Indictment and information, § 59*—*when indictment will not be quashed.* That a grand jury may have heard or considered some incompetent evidence is not ground for quashing an indictment.

4. Indictment and information, § 59*—*when presence in grand jury room of abstract of testimony in bankruptcy proceedings is not ground for quashing indictment.* Where there was in the grand jury room during their consideration of an indictment for embezzlement of the funds of a bankrupt bank a typewritten abstract of certain testimony which had been taken before a referee in bankruptcy, but no proof that the grand jury had any knowledge of its contents or that it was referred to or considered by them in any way, the indictment will not be quashed.

5. Criminal law, § 194*—*discretion of court as to employment of special counsel for State.* The employment of special counsel to assist in prosecution of a criminal case is a matter resting in the sound discretion of the trial court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CCVIII 30

'6. EVIDENCE, § 430*—*when witnesses are competent to testify as to value of assets of estate of bankrupt banking partnership.* The testimony of the attorney' for a trustee and of a referee in bankruptcy and of an accountant expert, all·having special knowledge of the contents of the books, papers, accounts and assets of the bankrupt's estate and of the' bankruptcy proceedings and able from such knowledge to give summaries from such records and proceedings concerning the transactions disclosed thereby, and to express opinions as to the value or lack of value of a large portion of the assets, *held* to be competent in a prosecution of the members of a banking partnership for embezzlement from such estate.

7. EMBEZZLEMENT, § 18*—*when schedules in bankruptcy proceedings are admissible in prosecution of members of bankrupt banking partnership.* The schedules filed in a bankruptcy proceeding and all it disclosed, *held* to be competent evidence in a prosecution of the members of a bankrupt banking partnership for embezzlement of the estate, although the proceeding was involuntary, where it was instituted and instigated by the bankrupt through the instrumentality of the petitioning creditors.

8. EMBEZZLEMENT, § 18*—*what is competent evidence as to value of assets of bankrupt.* Proof of what a trustee in bankruptcy realized in money from the assets within a comparatively short time after the failure, *held* to be competent evidence tending to show their value and their value at the time of the failure, in a prosecution of the bankrupts for embezzlement of the estate.

9. EMBEZZLEMENT, § 18*—*what is competent evidence of loss of depositor in bankrupt bank at time of failure.* Proof of what a trustee in bankruptcy for a bankrupt bank realized in money from the assets within a comparatively short time after the failure, *held* to be competent evidence tending to show the loss, if any, of a depositor on the day of the failure, in a prosecution for embezzlement of such depositor's money.

10. EMBEZZLEMENT, § 18*—*what is evidence of value of assets of private bank at time of failure.* Defendants' acts and conduct for 2 years prior to their bankruptcy in repeatedly resorting to questionable devices and practices to avert bankruptcy, *held* sufficient to throw light upon the question of the value of their assets at the time of the failure, in a prosecution of the members of a banking partnership for embezzlement of funds of the bank.

11. WITNESSES, § 243*—*when constitutional rights of defendants in criminal prosecution are not violated.* The constitutional rights of defendants charged with embezzlement of bank funds are not violated by introduction in evidence of the bank books, papers and documents in the presence of the trustee in bankruptcy of the bank.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Error to the Circuit Court of La Salle county; the Hon. S. C. STOUGH, Judge, presiding.  Heard in this court at the April term, 1917.  Affirmed.  Opinion filed August 7, 1917.  Rehearing denied October 10, 1917.

A. E. BUTTERS, HENRY M. KELLY, STEAD, WOODWARD & HIBBS and RAY E. LANE, for plaintiffs in error.

GEORGE S. WILEY, for defendant in error; LEE O'NEIL BROWNE, of counsel.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

The plaintiffs in error, John E. Hartenbower and George D. Hiltabrand, for a number of years conducted a bank at Tonica in LaSalle county, and transacted a regular banking business under the name of "Tonica Exchange Bank." For about 5 years preceding its failure, the bank was in direct charge of George D. Hiltabrand. John E. Hartenbower during that time lived in Chicago, and had an office there, but kept in constant touch with the business of the bank, made frequent visits to Tonica, and at all times was a dominating factor in its management. W. J. Ebner and B. F. Hiltabrand were employed in the bank as bookkeepers, and in the transaction of the business acted as assistants to George D. Hiltabrand, who was the cashier. The bank failed on November 14, 1913, and its liabilities at that time amounted to the total sum of $514,194.59. The proof shows that for at least 2 years prior to the actual failure of the bank it was in critical financial straights; that in order to obtain the necessary current funds, to keep the business going, plaintiffs in error had to arrange with the Continental & Commercial Bank of Chicago to have money advanced to them on their commercial paper, and other collateral which they had, to meet the drafts, which were issued by the bank in the regular course of business, and at times it became a close

question, as to whether or not they would be able to obtain in that way a sufficient supply of money to meet their current obligations; and it was because they were finally unable to raise the amount of money required that the failure was precipitated which had been impending for some time. On the day of the failure, when plaintiff in error Hartenbower realized that they were at their "wit's end" to raise any more money, he called upon his partner, Hiltabrand, and the bookkeeper, Ebner, to come to Chicago, to talk the matter over; and that evening, according to the testimony of Ebner, he and Hiltabrand went to Chicago, and there met Hartenbower at his office, and the financial situation of the bank was talked over. During this conference the plaintiffs in error, together with a Mr. Lane, whom they met in Hartenbower's office, left the office and were gone for about an hour. When they returned, Hartenbower immediately made a statement which characterized their financial condition. He said: "We cannot get any more money. We are broke, we have arranged to go into bankruptcy." Three days afterwards, on November 17, 1913, a petition was filed by three creditors of the bank, W. E. Krieder, I. N. Bassett and J. J. Matern, to have the plaintiffs in error adjudged bankrupts. These bankruptcy proceedings were referred to Arthur H. Colwell as referee. Frank E. Ritchey became trustee and took charge of the books, papers, letters, documents and all property pertaining to the bankrupt estate. In the bankruptcy proceedings, the assets of the plaintiffs in error, which were scheduled by them in the bankruptcy proceedings at $551,648.57, were converted into money in the regular course of the proceedings, in so far as they had any money value, but the bulk of the assets proved to be worthless; and the evidence shows that the total amount realized by the trustee was $42,751.39, and that at least 90 per

cent. of the amounts on deposit in the bank was lost to the depositors.

At the June term, 1914, of the Circuit Court of LaSalle county, the plaintiffs in error were indicted. The indictment upon which they were tried contains six counts; and the offenses charged in the different counts arose out of and were parts of the same transaction. At the conclusion of the evidence for the People, the trial court, on motion of the plaintiffs in error, compelled the People to elect under which of the counts of the indictment they would ask a conviction, and the People thereupon rested their case on the first and second counts; no error was committed by the denial of the motions previously made to compel such election. In this case, the compelling of an election was a matter entirely within the sound discretion of the trial court, as well as the time when such election should be required. Bishop on Criminal Procedure, sec. 461; *Schintz v. People,* 178 Ill. 324.

The charge in the first count is that plaintiffs in error, on the 14th day of November, 1913, were doing a banking business, and received a deposit of money from Bert Phelps of the value of $64; and that at the time of receiving such deposit they were insolvent, and had knowledge of such insolvency, and that thereby the money deposited was lost to the depositor. And the second count charges that the plaintiffs in error, pursuant to a conspiracy entered into by them to cheat and defraud Bert Phelps, and to embezzle his money, while doing a banking business under the name of the Tonica Exchange Bank, received from said Phelps the sum of $64 lawful money of the value of $64 knowing at the time that they were insolvent; and that they then and there feloniously and fraudulently converted the same to their own use. Upon the trial of the case the plaintiffs in error were found guilty, and the punishment fixed by the jury was the

payment of a fine of $128 and imprisonment in the penitentiary for a term of 3 years. Upon this verdict the court entered a judgment of conviction, and duly sentenced the plaintiffs in error in conformity therewith. And the case is brought to this court for review by writ of error. A number of errors are assigned; only the more important ones however are discussed in the briefs and these will be considered. Much stress is laid by plaintiffs in error in their argument upon an alleged error of the trial court in overruling a motion to quash the indictment. The principal ground urged for this motion is that Lee O'Neil Browne, a practicing attorney of LaSalle county, not officially connected with the State's Attorney's office, and who had been employed by certain creditors to assist in the prosecution, was permitted to be present in the grand jury room during the examination of some of the witnesses for the People, and was allowed to conduct such examination. It appears that previous to that time, Mr. Browne had been employed as attorney for the receiver of the insolvent bank involved, to assist in the work of ascertaining and collecting the assets of the bank; and he made an investigation into the books, papers, securities and records, as well as generally of all the assets of the bank, and he had thereby become especially familiar with these matters. The State's Attorney apparently deemed it advisable to avail himself of the special knowledge which Mr. Browne had acquired in the case to more completely and expeditiously elicit the facts from the witnesses called before the grand jury by having Mr. Browne examine them, as was done, in the presence of the State's Attorney, and under his direction and supervision. It is not contended that Mr. Browne was present in the grand jury room at any time when the grand jury were deliberating upon the case, or discussing questions pertaining to the finding of an indictment, nor when any vote was taken. Nor

does the evidence disclose any improper conduct on the part of Mr. Browne, nor any attempt to influence the grand jury in any way concerning the performance of their duties. In the examination of the witnesses, in effect, he acted as assistant to the State's Attorney, but without having been regularly appointed for the performance of such duties. While this service performed in the grand jury room was one not authorized by statute, and was to some extent in conflict with the strict rules of secrecy, which pertains to grand jury proceedings, yet in the absence of any proof of misconduct or of any acts which can be considered as prejudicial to the rights of the plaintiffs in error, Mr. Browne's presence in the grand jury room, under the circumstances stated, does not furnish a sufficient legal basis for the quashing of the indictment. It is true, there is some conflict in the decisions of the courts of review in the different states on this question, but the prevailing doctrine is correctly stated in 33 L. R. A. (N. S.) 568, by the author who in a note concisely sums up the result of a review of the authorities on this question with this statement: ''The weight of authority seems to hold that the fact that a special attorney was present before the grand jury, and assisted in examining witnesses, will not avoid the indictment, if he was not present during the deliberations of the grand jury and was not guilty of any further misconduct.'' The statement is clearly borne out by the authorities. *State v. Brewster,* 70 Vt. 341; *Bennett v. State,* 62 Ark. 516; *State v. Salmon,* 216 Mo. 466, 115 S. W. 1107; *State v. Bates,* 148 Ind. 610; *State v. Miller,* 95 Iowa 368; *Shattuck v. State,* 11 Ind. 475; *Courtney v. State,* 5 Ind. App. 356; *State v. Kimball,* 29 Iowa 267; *Wagner v. State,* 119 Md. 559, 87 Atl. 407; *Fooshee v. State,* 3 Okla. Cr. 666, 108 Pac. 559; *Cross v. State,* 78 Ala. 430; *Blevins v. State,* 68 Ala. 92; *State v. Whitney,* 7 Ore. 386; *State v. Bacon,* 77

Miss. 366; *Sadler v. State,* 124 Tenn. 50, 136 S. W. 430; *Mullins v. Commonwealth,* 25 Ky. L. Rep. 2044, 79 S. W. 258; *State v. Tyler,* 122 Iowa 125; *State v. Adam,* 40 La. Ann. 745, 5 So. 30; *Wilson v. State,* 41 Tex. Cr. 115; *McElroy v. State,* 49 Tex. Cr. 604; *People v. Bradner,* 44 Hun (N. Y.) 233; *State v. Justus,* 11 Ore. 178; *Higgins v. State,* 157 Ind. 57, 60 N. E. 685; *People v. Coco,* 70 N. Y. Misc. 195, 128 N. Y. Supp. 409; *United States v. Simmons,* 46 Fed. 65; *State v. Sullivan,* 110 Mo. App. 75, 84 S. W. 105.

In our own State, so far as the matter has been passed upon, the decisions are directly in line with the authorities above cited. Thus the Supreme Court in the case of *People v. Nall,* 242 Ill. 284, in passing upon a similar situation, uses this language: "The contention is made that the court erred in refusing to quash the indictment, because, it is argued, one of the special attorneys for the State appeared before the grand jury during its consideration of the indictment, and that the indictment was on that account tainted with malice, if not with corruption, and the court should have quashed it. It appeared from the testimony of the foreman of the grand jury and the special counsel in question that the latter was called before the grand jury which returned this indictment, but both these witnesses testified that said counsel was not asked any questions with reference to the indictment here in question. * * * We find nothing in the record indicating that there was any improper conduct on the part of the grand jury or this attorney."

And in *People v. Arnold,* 248 Ill. 169, where the charge against the accused was rape, and the father of the prosecuting witness was allowed to remain in the grand jury room while she was giving her testimony, the court, in holding that this was not a ground for quashing the indictment in that case, sums up the matter in this way: "That the father was in the

grand jury room at the time when some cloths that had been used were identified, for the alleged reason that the girl was timid and unable to appear alone in respect to a matter of that kind. * * * There could have been no prejudice to the defendant from anything that occurred before the grand jury, and the court did not err in refusing to quash the indictment.''

It is also urged as a further ground for quashing the indictment that the grand jury had before them a typewritten transcript of testimony which had been taken before the referee in bankruptcy, and that this evidence was not competent to be considered by the grand jury, and that they may have considered it. There was such a transcript of evidence in the grand jury room, but there is no proof that the grand jury had any knowledge of its contents, or that it was referred to or considered by them in any way. But even though the grand jury might have heard or considered some incompetent evidence, this fact would not be a ground for the quashing of an indictment. *People v. Bladek,* 259 Ill. 69. We are of opinion, therefore, that the motion to quash was properly denied by the court.

Another ground urged for a reversal of the judgment is that, over the objection of the plaintiffs in error, the special counsel employed was allowed to assist in the trial of the case. There is no merit in this contention. This was also a matter that rested in the sound discretion of the trial court, and the record does not disclose any proper basis for excluding the special counsel from participating in the trial. *Hayner v. People,* 213 Ill. 142; *People v. Blevins,* 251 Ill. 381; *People v. Gray,* 251 Ill. 431; *People v. Donaldson,* 255 Ill. 19; *People v. Strosnider,* 264 Ill. 434; *People v. Spencer,* 264 Ill. 124. The case cited by counsel for plaintiffs in error (*People v. Gerold,* 265 Ill. 448) is not in conflict with the cases above referred to, but it expressly reaffirms the doctrine announced therein

in this language: "This court has held that whether counsel should be employed to assist the State's Attorney in the prosecution of a case rests largely in the sound discretion of the court, to be decided according to the special facts and the situation in each case; that it is the duty of the court to prevent oppression of the accused and permit only such assistance as justice and fairness may require."

It is also contended, in reference to the special counsel, that in his opening statement at the trial he made assertions concerning facts which the evidence afterwards introduced did not justify, and which were therefore prejudicial to the plaintiffs in error. The record, however, does not bear out this contention. The proof made substantially sustains the counsel's statements concerning the facts.

It is contended that no proper proof of value of the assets of the bank in question was made, and that the proof which was made did not show the value of the assets at the time of the failure. Also that the evidence of the amounts realized from the assets in the settlement of the bankrupt's estate, by the trustee in bankruptcy, was incompetent; and special exception is taken to the testimony of James E. Malone, who had acted as attorney for the trustee; and the testimony of Arthur Colwell, the referee in bankruptcy; and of Walter M. LeClear, an accountant expert. These witnesses because of their connection with the case had all gained special knowledge of the contents of the books, papers, accounts, and the assets generally of the bankrupt estate, and of the proceedings had with reference thereto, and were able with this knowledge to give summaries from the books, papers and records of the bank and the proceedings in bankruptcy concerning the business transactions as disclosed by such books, papers and records and proceedings, and of the money realized from the different assets by the trustee in the usual and regular

way of winding up the bankrupt estate. They were also able to express opinions as to the value or the lack of value of a large portion of the assets. Testimony of this character is competent. *Chicago & W. I. R. Co. v. Heidenreich*, 254 Ill. 231. And it has been repeatedly held that where the originals consist of numerous documents, books, papers or records which cannot be conveniently examined in court, and the fact to be proved is the general result of the whole collection, evidence may be given as to such result by any competent person who has made an examination. *People v. Gerold*, 265 Ill. 448; *Reinke v. Sanitary Dist. of Chicago*, 260 Ill. 380; *Welsh v. Shumway*, 232 Ill. 54.

The point is also made that the schedules filed in the bankruptcy proceedings, as well as the other proceedings, are incompetent as evidence against the plaintiffs in error, because the proceedings were involuntary. The proceedings were involuntary in form only. As a matter of fact, as shown by the evidence, they were instigated and instituted by the plaintiffs in error themselves, through the instrumentality of the three creditors who filed the petition; in legal effect they were the same as if brought and carried on by the plaintiffs in error. The objection to the evidence therefore based upon the ground that the proceedings were involuntary is of no weight, and the evidence contained in the schedules, as well as in the other proceedings, must be regarded as in the same category as if the schedules had been filed in voluntary proceedings instituted by the plaintiffs in error.

Two inferences, at least, may be reasonably drawn from the instigation of the bankruptcy proceedings: First, that when the plaintiffs in error determined to have them instituted, they were conscious of insolvency; and secondly, that the purpose of the proceedings was to legally establish such insolvency, and the extent thereof. And all the proceedings disclose con-

cerning these elements in the case is competent evidence.

As to the evidence concerning the value of the assets, it consisted chiefly in a showing of a lack of value. The bulk of the assets had no market value and were shown to be practically without any value whatever. It was for this reason, as shown by the evidence, that the trustee was unable, in the usual and ordinary course of liquidation of the bankrupt estate, to realize anything from them; and the efforts of the trustee to convert the assets into money was in many instances a practical test, and the only one that could be applied to some of the assets under the circumstances, to ascertain whether or not such assets had any money value. We are of opinion that the proof of what was realized in money from the assets in the bankruptcy proceedings, which was within a comparatively short time after the failure, was competent evidence tending to show the value of the assets, and tending to show their value also at the time of the failure of the bank; and that it was proper for the jury to have this evidence to consider in connection with the other evidence in the case concerning values. But this evidence was also competent upon the question of what loss, if any, the depositor, involved in this case, sustained by making the deposit on the day of the failure. There is evidence in the record of certain acts and the conduct of the plaintiffs in error with reference to the assets of the bank which also throws some light upon the question of the value, or rather the lack of value, of the assets at the time of the failure of the bank. The evidence discloses that for about 2 years prior to the failure the plaintiffs in error found it necessary repeatedly to resort to questionable devices and practices to avert the catastrophe which finally struck them. On repeated occasions they were in desperate need of money and the means to raise the funds to keep their business going. It is a proper inference,

and a matter within the common knowledge of men versed in business affairs, that if the assets from which the trustee was unable to realize any money had really had value, that there could have been no necessity for resorting to the devices which they employed and no occasion for their desperation. But the assets could have been relied upon to have furnished abundant collateral, from which their money needs could at all times have been legitimately and easily provided for, and no doubt they would have been used for that purpose if they had had the value later claimed for them. Nor is it at all probable that in that event at the time of the failure they would have regarded themselves as "broke" and ready for the bankruptcy court. Plaintiffs in error claim that their constitutional rights were violated by using the books, papers and documents of the bank in the presence of the trustee as evidence against them. It has been repeatedly held that no constitutional rights are violated by the introduction of evidence of this character. *Wilson v. United States,* 221 U. S. 361; *Wheeler v. United States,* 226 U. S. 478; *Grant v. United States,* 227 U. S. 74. And that evidence of this character is sometimes admissible and competent even though the letters, papers and documents may have been unlawfully obtained. *Trask v. People,* 151 Ill. 529; *Gindrat v. People,* 138 Ill. 103; *Siebert v. People,* 143 Ill. 583.

Most of the contentions made by the plaintiffs in error concerning the inadmissibility of the evidence of certain witnesses, and of the books and papers of the bank, and of the evidence concerning values, were passed upon by this court adversely to such contention in the case of *People v. Munday,* 204 Ill. App. 24, and the same questions were also decided adversely to the contentions of the plaintiffs in error by the Supreme Court, in the same case. (280 Ill. 32.)

It is true that there is evidence in the record of questionable competency, but in our opinion it is not of such a character or importance that it could have affected the result of the trial, either upon the question of guilt or the measure of punishment. The proof of guilt established by the competent evidence in the case is so clear, convincing and complete, that the jury could not have had any reasonable doubt about it. The slight errors committed are therefore of no consequence, and would not justify a reversal of the judgment. *People v. McCann,* 247 Ill. 130; *People v. Cleminson,* 250 Ill. 135; *People v. Burger,* 259 Ill. 284; *People v. Strosnider,* 264 Ill. 434. Judgment is affirmed.

*Affirmed.*