No. 193.

## COURTNEY v. THE STATE.

CRIMINAL LAW.—*Use of Stenographer Before Grand Jury.*— *When Will not Abate an Indictment.*—While the use of a stenographer by a prosecuting attorney, for the purpose of taking down the statements of witnesses as they testified concerning an alleged offence before the grand jury, is not provided for by statute, and while there is an express statutory provision (section 1655, R. S. 1881) that the grand jury must select one of their number as clerk, and that said clerk, among other things, must· take minutes of the evidence, to be preserved for the use of the prosecuting attorney, still the use of such stenographer will not result in the abatement of a particular indictment, without some showing that the accused was injuriously affected, or that something unauthorized was said or done which probably injured him.

SAME.—*Special Judge Trying a Case.*—*Right of Regular Judge to Hold Court for Presentation of Indictment.*—The regular elected judge of a circuit court, who has granted an application for a change of judge in a cause pending before him in that court, and who for the trial of such cause has called in another judge or has appointed an attorney as special judge, can open and hold a session of that court for the purpose of the presentation of indictments by the grand jury while such trial before the substituted or·special judge is in progress.

SAME.—*Plea in Abatement.*—*Special Finding of Facts.*—The provision of the statute in reference to a special finding of facts applies only to civil actions, and it is not error for the court in a criminal case to overrule the motion of the defendant for the court to make a special finding of the facts with its conclusions of law ·upon them on the issue formed on a plea of abatement.

SAME.—*Filing of Indictment on Last Day of Term.*—*Recording of Thereafter.*— If an indictment was presented and filed on the last day of the term, the recording of the indictment at a later day by the clerk can not be cause for quashing the indictment.

SAME.—*Prosecution for Being a Common Gambler.*—*Evidence of Visits Within Statute of Limitations.*—In a prosecution for the offense of being a common gambler, it was not error to refuse to confine the introduction of evidence of the defendant's visits to the particular place mentioned in the indictment where gambling was permitted to the period stated in the indictment. Evidence was admissible of any such visits which were shown to have taken place within the statute of limitations.

SAME.—*Visits to Other Gambling Houses.*—*Evidence of Admissible.*—Upon the trial of a person charged in the indictment with being a common gambler, it was proper to allow the State to prove that the defendant visited

other places in the same city where gambling with cards was permitted and carried on. ⋅ Under the indictment it was necessary to show that the defendant frequented the place mentioned therein for the purpose of gaming with cards, and the evidence of visits to other gambling houses might have a tendency to prove the purpose for which he visited the one in question.

SAME.—*Plea in Abatement.—Demurrer.—Harmless Error.*—Where the court sustained the demurrer to certain paragraphs of a plea in abatement in a criminal case, but all the matters alleged therein were admissible under a paragraph to which the demurrer was overruled, the error, if any, in sustaining the demurrer, was one of which the defandant can not complain, as he could not have been injured thereby.

From the Montgomery Circuit Court.

*J. Wright, J. M. Seller* and *J. R. Courtney*, for appellant. *A. G. Smith*, Attorney General, for the State.

BLACK, J.—The appellant was indicted under section 2085, R. S. 1881, relating to the offence of being a common gambler, the charge against the appellant being that he, on the 1st of October, 1889, and on divers other days between said day and the making of the presentment (October 26th, 1889), at, etc., did then and there unlawfully, for the purpose of gaming with cards, frequent a place where gambling was then permitted, to wit, the building and room of Albert Muhllisen, then and there situated, contrary, etc.

The appellant pleaded in abatement in four paragraphs, each sworn to by him separately, to which the appellee demurred. The demurrer was overruled as to the first paragraph, and was sustained as to the other paragraphs.

The first paragraph, which the court held to be sufficient, and the issue formed by a denial of which was tried, alleged in substance that the indictment was not returned in the Montgomery Circuit Court or presented in open court, or presented or returned in any court of this State authorized by law to receive such returns and presentments.

The second and fourth paragraphs set forth circumstances under which it was alleged the indictment was received from

the grand jury, the purpose of each paragraph being to show that the indictment was not duly returned into open court.

The first paragraph being held and treated as sufficient, the facts alleged in the second and fourth paragraphs, if they constituted matter in abatement, would be admissible in evidence under the first paragraph, and would have the same result, the issue upon this plea being tried before the trial under the plea of not guilty. It is manifest that the appellant suffered no injury because of the action of the court in sustaining the demurrer to the second and fourth paragraphs.

In the third paragraph it was shown that one William M. White was permitted to be and remain before the grand jury in their room during the time that the evidence was being introduced before the grand jury "and during their proceedings herein; that said William M. White has never been admitted to the practice of the law in any court of this State, is not a member of the bar of this court or any other court of this State, is not a lawyer and does not pretend to be; that these facts were known to said court and prosecuting attorney at the time of the empanelling of the grand jury. for the September term, 1889, of this court; that the prosecuting attorney was in reasonably good health, was able to attend and did attend the entire sessions and meetings of said grand jury while the evidence in reference to this indictment was being introduced before said grand jury; that the sole, whole and only purpose of allowing said White before said grand jury was as a short-hand reporter to take down the evidence as the same was being presented, and that is what he did; that Albert B. Anderson, prosecuting attorney of said county, was able and competent to counsel and advise said grand jury during all their sitting as such, and the presence of said White before said grand jury was not wanted or necessary as deputy prosecuting attorney or as a witness before said grand jury, but as a stenographer said White was permitted to so remain before said grand jury" for the purpose, and in order that "after the grand

jury had adjourned and had been discharged, he might and would write out the evidence and proceedings of the grand jury in long-hand report thereof to be used on the trial of indictments found, to refresh the memory of witnesses who testified before the grand jury, when they should testify on the trial of the indictments found, and to impeach the State's own witnesses on the trial by said White as a witness of their testimony before the grand jury; so that said White was allowed to be and remain before the grand jury to be a witness subsequently against the persons prosecuted and the witnesses who testified before the grand jury, and not as a deputy prosecuting attorney or as a witness to any facts before said grand jury."

This paragraph is condemned by counsel for the appellee upon the ground that it is not averred that White was not the regularly deputized prosecuting attorney.

We need not decide the question thus suggested. It is alleged in the plea that the only purpose for which White was present was to act in the capacity of stenographer, and that all he did was to act in that capacity. It does not appear that he said anything in the presence of the grand jury, or that he did anything to influence their conduct. It is not shown that any use was made of his report or of his knowledge whereby the appellant's rights could have been affected.

While the use of a stenographer by the prosecuting attorney under such circumstances is not provided for by statute, and while there is an express statutory provision (section 1655, R. S. 1881), that "The grand jury must select one of their number as clerk, who must take minutes of their proceedings (except the votes of the individual members on a presentment or indictment), and also of the evidence given before them; which shall be preserved for the use of the prosecuting attorney, to subserve the purposes of justice," yet we can not conclude that such a departure from the mode indicated by the statute should result in the abatement of a

particular indictment, without some showing that the accused was injuriously affected, or that something unauthorized was said or done which probably injured him. The presence of a stenographer before a grand jury is not necessarily inconsistent with a due administration of justice in criminal cases. *United States* v. *Simmons*, 46 Fed. R. 65.

In the consideration of questions presented upon an appeal in a criminal action, this court can not regard technical errors or defects, or exceptions to any decision or action of the court below, which did not, in the opinion of this court, prejudice the substantial rights of the defendant. Section 1891, R. S. 1881.

Upon the trial of the issue formed upon the plea in abatement, it appeared in evidence that an affidavit for a change of judge having been filed in a certain civil action pending in the court below, the change was granted, and the Hon. Joseph M. Rabb, judge of another judicial circuit, was called to try said civil cause. On Saturday the 26th of October, 1889, being the last day of the regular September term of the court below, while Judge Rabb was occupying the bench in the main court-room in the court-house, at the county seat of Montgomery county, actively engaged in the trial of said civil cause, the Hon. Edward C. Snyder, judge of the twenty-second judicial circuit, and *ex officio* judge of the court below, was informed that the grand jury was ready to report. Thereupon, taking with him the deputy clerk from the place usually occupied by him in the main court-room, where said trial was in progress, Judge Snyder went to another room in the same court-house, a room occasionally used for holding court, and there found the grand jury. He then took a seat behind a table and facing the grand jurors, and, in the customary form, received from the foreman a large number of indictments, among them the indictment against the appellant above mentioned. Besides the judge and the members of the grand jury, there were present the deputy clerk, deputy sheriff, the

prosecuting attorney, and two or three other persons. There is sufficient evidence that the door of this room was not fastened, but was open, though there is some evidence of a contrary tendency. During the time (about five minutes) while Judge Snyder was thus receiving the indictments in the grand jury room, the main court-room was occupied by Judge Rabb in the proceedings in said civil action.

The statute (sections 1670, 1672, R. S. 1881) contemplates the return of an indictment by the grand jury into court; and the Constitution (article 1, section 12) requires that all courts shall be open. *Stefani* v. *State*, 124 Ind. 3; *Ford* v. *State*, 112 Ind. 373; *Waterman* v. *State*, 116 Ind. 51.

It can not be questioned that the indictment was returned into the Montgomery Circuit Court in open session, with due formality and regularity, unless it can be said that the fact that the trial in the civil action was in progress before Judge Rabb requires a contrary conclusion.

It is provided by the constitution of Indiana that the judicial power of the State shall be vested in a Supreme Court, in circuit courts and in such other courts as the General Assembly may establish (article 7, section 1); that the circuit courts shall each consist of one judge (article 7, section 8); that the State shall, from time to time, be divided into judicial circuits; and that a judge for each circuit shall be elected by the voters thereof (article 7, section 9). It is further provided that the general assembly may provide by law that the judge of one circuit may hold the courts of another circuit in cases of necessity or convenience; and in case of temporary inability of any judge, from sickness or other cause, to hold the courts in his circuit, provision may be made by law for holding such courts (article 7, section 10).

It is provided by statute (section 412, R. S. 1881) that the court in term or the judge thereof in vacation, upon the application of either party, made upon affidavit showing specified causes, shall change the venue of any civil action from the judge; and (section 415) that when a change is so granted

from the judge, the court or judge shall call a judge of any circuit, superior, or other court of general jurisdiction, or any judge of the Supreme Court, to preside in such case and try the same; or if it shall be difficult in the opinion of the court, for any cause, to procure the attendance of such judge the court, in order to prevent delay, may appoint any competent and disinterested attorney of this State, in good standing, to act as judge in said cause, etc.; and that he shall have power to hear and determine said cause until the same is finally disposed of, or change the venue thereof in proper cases.

When a change of venue is taken from the presiding judge, the cause may be set for trial at an adjourned term in vacation, or the judge may fix it for trial during any regular term (section 1380, R. S. 1881).

It is also enacted (section 1382) that under certain specified conditions circuit courts may be in session in different counties of the same circuit at the same time.

A court must transact the business of a court during a term, which must be held at a time fixed by law or designated according to statutory provision. *Batten* v. *State*, 80 Ind. 394; *Cain* v. *Goda*, 84 Ind. 209.

Where a law authorizes or contemplates the doing of an act by a court, it must be understood that the court in term time may or must do it, and the judge in vacation can not, unless the power is expressly conferred upon him by law. *Newman* v. *Hammond*, 46 Ind. 119.

Where a judge other than the regular judge of the court is called by the latter to preside in a cause, upon the granting of an application for a change of judge, such change of judge does not work a change of court, but the court continues the same, and such cause continues to be a cause pending in such court. *Singleton* v. *Pidgeon*, 21 Ind. 118; *Stinson* v. *State, ex rel.*, 32 Ind. 124; *Glenn* v. *State, ex rel.*, 46 Ind. 368; *Arnold* v. *Norton*, 42 Ind. 248; *Hutts* v. *Hutts*, 51 Ind. 581; *Greenup* v. *Crooks*, 50 Ind. 410.

A special judge presiding in place of the regular judge, upon a change of venue from the latter, has full authority as judge of the court wherein such cause is pending as to that particular case alone. The authority of the regular judge over that case is excluded, while the special judge continues to exercise jurisdiction. *Wilson* v. *Piper*, 77 Ind. 437; *Beitman* v. *Hopkins*, 109 Ind. 177; *Staser* v. *Hogan*, 120 Ind. 207; *Lerch* v. *Emmett*, 44 Ind. 331; *Perkins* v. *Hayward*, 124 Ind. 445.

In the case last cited, where, after the regular judge had made an order adjourning the term until the time fixed for the next regular term, a special judge proceeded with a trial then commenced before him, it was said that the regular judge could in no wise rightfully control or interfere with the proceedings of the special judge, for the latter was the sole and exclusive judge in the cause; that he did not share power with the regular judge, who could make no order affecting the case; that it was for the special judge to determine whether the trial should continue until the end was reached; and that the particular case, where a special judge is called in, with all its incidents from the beginning to the end, passes under the exclusive control and jurisdiction of the special judge, subject to revert to the control of the regular judge in the event that the special judge becomes incapacitated or refuses to act. The special judge, having taken jurisdiction, has a right to continue the case to any day. *Wilson* v. *Piper, supra.*

In the case before us, it can not be said that there was any error in the calling of Judge Rabb to try the particular case, or in his proceeding with the trial at the time at which the indictment against the appellant was received by Judge Snyder. It was not within the authority of Judge Snyder to adjourn or to postpone the trial over which Judge Rabb was presiding. Judge Snyder had no authority to receive the indictment from the grand jury, unless he had power to open and hold a session of the circuit court and proceed to

try causes therein and to do any act which can be done only by a circuit court.

While the trial was in progress before Judge Rabb, Judge Snyder was still the judge of the twenty-second judicial circuit, and Judge Rabb was not the judge of that circuit, though he had authority to act in a judicial capacity in that circuit.   While that trial was progressing, Judge Snyder could perform such acts within his circuit as a circuit judge may rightfully perform out of court; and during any adjournment or suspension of the proceedings in the cause before Judge Rabb, when he was not presiding in said cause, Judge Snyder might proceed with the business of the term.

The question before us for decision is, whether or not the regular elected judge of the circuit court, who has granted an application for a change of judge in a cause pending before him in that court, and who for the trial of such cause has called in another judge, or has appointed an attorney as special judge, can open and hold a session of that court and judicially dispose of matters pending or arising therein, while such trial before the substituted or special judge is in progress.

The question is somewhat novel and not without difficulty, and there may be cases in the books which seem to sustain the position of the appellant.

There can be no doubt that if the judge pro tem. is clothed with and exercising authority to hold the term, or a part thereof, with full power to dispose of any and all business pending in the court or that may arise therein, no other judge would have authority to do likewise at the same time.

There is a distinction between the authority of such a judge and one called in, as in this case, to try and dispose of a single case.

Judicial authority can not be delegated.   The calling in of another judge or the appointment of an attorney to act as judge is not, properly speaking, a delegation of judicial authority, but it is a mode prescribed by express law for the

appointment of a judge when the regular judge for some reason can not act. This mode of selecting a judge is not according to the course of the common law; it is a creation of statutory law.

As a regular judge can not delegate judicial authority, so he can not evade his responsibility or be deprived of his judicial power, except in some lawful manner. Statutory provisions curtailing his power should not be extended beyond their legitimate scope, but we should give to such provisions a reasonable construction, having reference to their purpose and to their remedial character.

If the elected judge of the circuit court be present at the time and place prescribed by law for the holding of a regular term of that court, he has authority in all matters within the jurisdiction of the court except those as to which he is personally disqualified, and except so far as the statutory law relating to changes of venue from the judge and to substituted or special judges may limit his powers. That law disqualifies him from taking any judicial action in a particular case in which the temporary judge is engaged, while it remains in his control. It provides that "the judge shall not be precluded from fixing any case for trial during any regular term, when the venue is changed from the judge." Section 1380, R. S. 1881. It does not provide that while such cause is being tried during a regular term the authority of the regular judge over other matters in the court at that term shall be suspended.

In practice, the law has not been construed in the *nisi prius* courts of the State as so interfering with and impeding the other business of the court. It has been found to be greatly conducive to the dispatch of business and to serve the convenience of bench and bar for the elected judge to proceed with other matters in the term. The case before us is a good illustration. This practice is not incompatible with the statutory provisions, but is within the remedial effect for which they were enacted. The regular judge has power to

hold his court during its prescribed term unless it is re-voked by these provisions, and they do not appear to have been enacted with such intent, and they do not necessarily have such a meaning.   It was intended thereby to provide additional facility for the disposal of business of the court, and full effect can be given to them without depriving the regular judge of any of his power except as to the particular case while it is within the control of the temporary judge.

We must conclude that the evidence showed that this indictment was presented in open court.

The appellant requested the court to make a special finding of the facts, with its conclusions of law upon them, on the issue formed upon the plea in abatement, and the overruling of that request was assigned as a cause in the motion for a new trial of that issue.

The provision for such a finding is made in the code of civil procedure, and does not extend to criminal actions.

The appellant's motion to quash the indictment was overruled.

It appears from the record that the indictment was filed on the 26th of October, 1889.   Following the signature of the prosecuting attorney, at the end of the indictment is the following, signed by the clerk:   " Recorded this 31st day of October, 1889."

As on the 26th of October the time fixed by law for the continuance of the term expired, and as it is thus indicated that the indictment was recorded on a later day, it is contended that the indictment should have been quashed for failure to comply with section 1672, R. S. 1881, by which it is provided, that "As soon as an indictment is presented and examined by the court, or information filed, the clerk shall endorse thereon the date of such filing or presentation ; and he shall then record such indictment or information, with its indorsements, in a record book to be kept for that purpose, and the clerk, before the last day of the term at which the same are presented, must compare the record with the

original indictment or information and certify to the correctness thereof."

We have a statute (section 1379, R. S. 1881) which provides : " If at the expiration of the time fixed by law for the continuance of the term of any court the trial of a cause shall be progressing, said court may continue its sitting beyond such time, and require the attendance of the jury and witnesses, and do, transact, and enforce all other matters which shall be necessary for the determination of such cause; and in such case, the term of said court shall not be deemed to be ended, until the cause shall have been fully disposed of by said court."

It is a general rule of decision that, in the absence of a showing to the contrary, we must presume that the clerk did his duty, and that the court did not err in its decision.

Whether, in support of the court's ruling upon the motion to quash, it should be presumed that the term had not ended when the indictment was recorded, we need not decide. If it be considered that it sufficiently appears that the indictment was presented and filed on the last day of the term, the provision relating to the recording of the indictment, with its endorsements, and the comparison of the record with the original before the last day of the term must be regarded as so far directory that the recording of the indictment at a later day can not be cause for quashing the indictment. Such delay does not, of itself, injure the accused or prejudice his substantial rights upon the merits.

The trial upon the indictment was had before the court, without a jury. The appellant's motion for a new trial was overruled.

It is contended that the court erred in permitting the introduction of evidence of the appellant's visits to the particular place mentioned in the indictment, where gambling was permitted, within two years prior to the presentment, and in not confining the proof to the period stated in the indictment.

Courtney v. The State.

In this there was no error.

The statute (section 1738, R. S. 1881) provides: "The precise time of the commission of an offence need not be stated in the indictment or information, but it is sufficient if shown to have been within the statute of limitations, except when the time is an indispensable ingredient in the offence," etc. *Clark* v. *State*, 34 Ind. 436; *Gilbert* v. *State*, 81 Ind. 565; *State* v. *Sammons*, 95 Ind. 22.

It is further insisted that the court erred in admitting evidence of the appellant's visits to other places within the same city where gambling with cards was permitted and carried on.

Under the indictment it was not sufficient to prove merely that the appellant frequented the place mentioned in the indictment; it was necessary to show that he did so for the purpose of gaming with cards. *Howard* v. *State*, 64 Ind. 516; *State* v. *Allen*, 69 Ind. 124.

The purpose of his visits to the place mentioned in the indictment was in issue, and it was a matter actually in dispute on the trial. It would tend to show the purpose of the appellant in frequenting a particular gaming house, to prove that during the same period he visited and gambled with cards at other gaming houses in the same neighborhood. It is to be presumed that the court admitted the evidence because of its tendency to prove the purpose of the appellant, and that the evidence was not given any other effect.

It is contended that the evidence did not sustain the finding of guilty. We have read all the evidence, and we find ourselves unable to disturb the result reached in the court below.

The judgment is affirmed.

Filed Nov. 16, 1892.