## A. D. ROSE v. THE STATE.

### No. 7148.    Decided November 8, 1922.

**1.—Murder—Manslaughter—General Reputation—Witness.**

Even though a witness answer on original examination that he knows the general reputation inquired about and that it is bad, if on cross-examination it satisfactorily appears that said witness was incompetent to give such opinion, it is not error to exclude the testimony. Following Trammell v. State, 10 Texas Crim. App., 468. One cannot testify to the bad reputation of a person whose reputation he has never heard in any way discussed.

**2.—Same—Evidence—Immaterial Testimony.**

Where a State witness testified that after defendant shot the deceased, defendant's pistol fell from his hand and the witness grabbed it and held it in position to shoot till the officers arrived, there was no error to refuse testimony that a defense witness arrived on the scene of the shooting and saw the State witness holding a pistol in his hand pointing in the direction of defendant, and also attempted to shoot her.

**3.—Same—Evidence—General Reputation.**

Where it appeared from the bill of exceptions that a defense witness had already tesified that he did not know the general reputation of the accused there was no error in sustaining the objection.

**4.—Same—Evidence—General Reputation—Moral Turpitude—Defendant as a Witness.**

Defendant having taken the witness stand was open to proper attack, showing that he was legally charged, arrested or convicted for a felony or any offense involving moral turpitude, but misdemeanors involving no moral turpitude were not admissible for the purpose of attacking his credibility.

**5.—Same—General Reputation—Isolated Facts.**

Where appellant introduced witnesses to prove his good reputation as a peaceable, law-abiding citizen, the State might cross-examine them if they had heard of any named misconduct of the accused amounting to a violation of law, but having declined to so cross-examine, it may not introduce its own witnesses to prove isolated acts of such misconduct. Following Thompson v. State, 38 Texas Crim. Rep., 341, and other cases; nor may the State cross-examine witnesses for the defense other than those by whom he sought his good reputation as to such isolated acts, nor can he so cross-examine defendant.

**6.—Same—Evidence—General Reputation—Suspended Sentence.**

Where appellant had not testified as to his own good reputation for peace and quietude, cross-examination of him to isolated instances of misconduct on his part not amounting to felony or involving moral turpitude was not permissible, there being no issue of suspended sentence in the case.

Appeal from the Criminal District Court of Tarrant. Tried below before the Hon. George E. Hosey.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

*Mays & Mays, F. M. Chaney,* and *Will R. Parker,* for appellant.—

On question of general reputation and isolated acts: Waters v. State, 241 S. W. Rep., 496; Johnson v. State, 241 id., 484; Sapp v. State, 190 id., 489; Sine v. State, 215 id., 961; Gray v. State, 86 id., 464; Hardin v. State, 123 id., 613; Fountain v. State, 241 id., 489.

*R. G. Storey,* Assistant Attorney General, and *Jesse M. Brown,* for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the Criminal District Court of Tarrant County of manslaughter, and his punishment fixed at five years in the penitentiary.

The evidence shows a killing occurring among a group of negroes, all of the eyewitnesses present testifying for the State, except appellant himself. A statement of the facts and a discussion of their sufficiency is not necessary to the disposition which we have made of the case, and is omitted.

Even though a witness answer on original examination that he knows the general reputation inquired about and that it is bad, if on cross-examination it satisfactorily appears that said witness is incompetent to give such opinion, it would not be error on the part of the trial court to exclude the testimony. Trammell v. State, 10 Texas Crim. App. 468. Witnesses may testify to the good reputation of parties inquired about, without having ever heard such reputation discussed, and this seems to be the holding of the authorities cited by ap-

36—92 T. C.

pellant, but we know of no case holding that one may testify to the
bad reputation of a party whose reputation he has never heard in any
way discussed.

A State witness testified that after appellant shot deceased the
pistol of appellant fell from his hand and witness grabbed it; that
appellant ran and witness held the pistol in a position to shoot till
the officers arrived. We find no error in the refusal of the trial court
to allow appellant's daughter to testify that she arrived on the scene
a short time after the shooting and saw the witness above mentioned
have in his hand a pistol pointed in the direction of appellant, and
that he pointed it at her and made an effort to shoot her. Such
rejected testimony would not seem to shed light on the interest,
purpose or prejudice of said State witness.

A witness called to sustain the character of the accused may not
be asked originally if he had ever heard anything to the effect that the
reputation of the accused for telling the truth was bad. The rules
governing proof in such case are well understood. From the bill of
exceptions presenting this matter it further appears that the wit-
ness had already testified that he did not know the general reputa-
tion of the accused in the regard mentioned.

Appellant introduced a number of witnesses by whom he proved his
good reputation for being a peaceable, law-abiding citizen in Ellis
County where he had gone to work and pick cotton for a number of
years. Thereafter and while he was a witness in his own behalf
appellant was asked by the State on cross-examination, as appears
from bills of exceptions Nos. 5, 8, 9 and 10, various question re-
lative to trouble and difficulties that he had had with different
people. It appears from said bill of exceptions No. 5 that he was
asked if he did not have trouble with a white man named Mein and
and if he had not cursed him and threatened to kill him, etc., all of
which was over the objection of appellant. He admitted that he had
had some words with Mr. Mein, and that on one occasion he had
tried to hit him but did not; that Mr. Mein had turned twenty-
five head of cattle into appellant's cane. By bill of exceptions No.
8 we are apprised of the fact that appellant was asked if he did not
have trouble with Dan Jackson, a negro man, out there and if he
had not cursed him and tried to hit him, objection to which matter
was overruled, and appellant answered that he did not remember.
From bill of exceptions No. 9 we learn that he was asked if he
did not have trouble with Mr. Woods, a white man, who worked at
a horse and mule barn, to which question, over objection, appellant
answered that he did not know such party. By bill of exceptions No.
10 is set forth appellant's objection to the question if he had not had
trouble and been arrested for cursing Dan Williams, and if there was
not now pending a case against him for cursing Dan Williams, to

which appellant stated that if there was such case pending it was a new one to him. Appellant having taken the witness stand was open to proper attack showing his legal charge, arrest or conviction for felony or any offense involving moral turpitude, and he might properly have been interrogated about these while a witness, but legal charges, arrests and convictions for misdemeanors involving no moral turpitude are not provable for the purpose of affecting the credibility of the defendant who has taken the stand. In the instant case while the witnesses by whom appellant sought to prove his good reputation for being a peaceable, law-abiding citizen, were on the stand, the State, for the purpose of testing their knowledge and as affecting the weight to be given their testimony, might on cross-examination have asked them if they had heard of named misconduct of the accused amounting to a violation of the law. Mr. Branch on page 117 of his Annotated P. C., cites many authorities supporting this proposition. The State having declined to so cross-examine said witnesses, may not introduce its own witnesses to prove isolated acts of such misconduct on the part of the accused. Thompson v. State, 38 Texas Crim. Rep., 341; Dimry v. State, 41 Texas Crim. Rep., 272. Nor do we think such evidence may be sought by cross-examination of witnesses for the defense other than those by whom he sought to support his good reputation, by asking them in reference to the facts of such isolated acts of misconduct on the part of the accused. Nor do we think such facts provable, over objection by the admission in whole or in part by the accused on cross-examination if he take the witness stand. Ward v. State, 70 Texas Crim. Rep., 417; Johnson v. State, 91 Texas Crim. Rep., 582, 241 S. W. Rep., 484; Fountain v. State, 90 Texas Crim. Rep., 474, 241 S. W. Rep., 489; Waters v. State, 91 Texas Crim. Rep., 592, 241 S. W. Rep., 496. In the instant case appellant had not testified as to his own good reputation for peace and quietude. Cross-examination of him as to insolated instances of misconduct on his part not amounting to felonies or involving moral turpitude, could have no legitimate effect in weakening the force of any testimony given by him, but might and probably would have much to do with prejudicing the jury against him. To the State's questions as to his guilt of the various acts of misconduct inquired about he returned answers admitting in part some of the matters sought to be elicited, and returning evasive answers to other questions from which the State or the jury might easily conclude him guilty of such other acts. There was no issue of suspended sentence in the case. Evidence whose effect was only to indicate numerous petty difficulties on the part of the accused with persons other than deceased, and at different times and places from that of the homicide, was not admissible under this record, and may have contributed, as said by us in the Waters case, *supra,* to the maximum penalty for manslaughter which was inflicted on appellant by the jury.

For the error in the admission of the testimony above referred to, the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*