**TOWNSLEY v. STATE.** (No. 9387.)

(Court of Criminal Appeals of Texas. Jan. 13, 1926. Rehearing Withdrawn April 2, 1926.)

1. **Jury ⬦⇒66(4)—Where judge, when court was not adjourned, recessed, or in vacation, went to the clerk's office 30 feet from bench where clerk drew venire, held, drawing was not invalid as not in "open court" (Vernon's Ann. Code. Cr. Proc. Supp. 1922, art. 660a [Code Cr. Proc. 1925, art. 592]; Const. art. 5, § 7; Vernon's Sayles' Ann. Civ. St. 1914, arts. 1396, 1397 [Rev. St. 1925, arts. 1602, 1603]).**

Where judge went to clerk's office when court was not adjourned, recessed, nor during vacation, which was 30 feet from bench, where clerk drew venire, held drawing was not invalid under Vernon's Ann. Code Cr. Proc. Supp. 1922, art. 660a (Code Cr. Proc. 1925, art. 592), providing that clerk should draw venire in presence of judge in open court in view of Const. art. 5, § 7 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1396, 1397; Rev. St. 1925, arts. 1602, 1603).

2. **Criminal law ⬦⇒1092(14)—Appearance in bills of matters in objection as grounds of objection only without certification as to their truth is not sufficient.**

Appearance of matters in objections in bills as grounds of objection only without certification as to their truth is not sufficient.

3. **Witnesses ⬦⇒274(2)—In murder prosecution, character witness of accused may be cross-examined on whether he has heard rumors of particular acts of accused inconsistent with claimed character.**

In murder prosecution, character witness of accused may be asked if he has heard rumors

of specific charges or acts of accused inconsistent with character claimed, not to establish truth of charges, but to test his credibility.

4. **Criminal law ⬦⇒366(6)—Where accused hit one man with pistol and shot another, statement of first within perhaps minute held admissible as res gestæ.**

Where accused hit one man with a pistol and shot another, statement of the first within perhaps a minute, within 60 feet of the murder, was a spontaneous exclamation of the participant, and part of the res gestæ, and its admission was not reversible error.

5. **Witnesses ⬦⇒280—Cross-examination by state as to whether witness did not know accused had pistol, and whether, if accused killed man with pistol later and had odor of liquor, he must have secured pistol and liquor after witness saw him, held not to require reversal as argumentative.**

Where witness had stated he did not detect odor of liquor on accused a few hours before murder, cross-examination by state as to whether witness did not know accused had a pistol, and whether, if accused killed a man with a pistol later and had the odor of liquor, he must have secured pistol and liquor after witness saw him, was not error requiring reversal as being argumentative.

6. **Witnesses ⬦⇒274(1)—Where character witness for accused stated on cross-examination that man accused shot previous to deceased was larger than accused, unanswered question whether accused's pistol did not overcome difference in weight was not reversible error.**

In murder prosecution, where character witness for accused was asked on cross-examination if, notwithstanding accused had shot a man previous to shooting the deceased, he would say accused enjoyed a good reputation, and answered that man shot was much larger than accused, unanswered question whether the 45-caliber pistol used by accused did not overcome the difference in weight was not reversible error.

7. **Criminal law ⬦⇒1111(3).**

Trial court's qualification of bill of exception becomes a part of it.

8. **Criminal law ⬦⇒665(4)—Where man heard part of testimony in prosecution before it was discovered that he knew facts relative to the case, permitting his testimony to go to jury against accused, though the rule had been invoked, was not error.**

Where man heard part of testimony in prosecution before it was discovered by either accused or state that he knew facts relative to the case, and he was summoned as a witness by the accused and used by the state, permitting his testimony to go to the jury, though the rule had been invoked, was not error.

9. **Criminal law ⬦⇒683(1).**

Strict rule with reference to direct and rebuttal testimony is not enforced in Texas in criminal cases.

---

⬦⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Criminal law ⬥683(1)—In murder prosecution, where accused claimed decedent or decedent's brother hit him, raising knot on his head, testimony after close of accused's case that another hit him in previous fight was admissible as rebuttal.**

In murder prosecution, where accused claimed that decedent or decedent's brother hit him back of the ear just before the killing, raising a considerable knot, testimony after close of accused's case that accused was in a previous fight in which another hit him behind the ear, raising the knot on his head, was admissible as rebuttal.

**11. Homicide ⬥295(2)—Instruction that provocation for manslaughter must arise at time of killing, and not be by person other than accused, held not error in view of evidence.**

Where accused had a fist fight and became angered when deceased and his brother, arriving after the fight, inquired as to the cause of the disturbance, and accused later, at another place, shot deceased, claiming he and his brother' assaulted him, which was denied, *held*, instruction that provocation, for manslaughter must arise at time of killing, and not be result of former provocation, or provocation by person other than deceased, was not reversible error.

**12. Homicide ⬥295(2)—Where accused became angered at decedent's inquiry as to fist fight accused had, and some time later accused shot deceased, refusal to instruct that, if accused believed decedent was renewing fight accused had with the other person previously, killing was manslaughter, was not reversible error.**

Accused had had a fist fight and became angered when deceased and his brother, arriving after the fight, inquired as to the cause of the disturbance. Accused later, at another place, shot deceased, claiming he and his brother assaulted him, which was denied. *Held*, refusal to instruct ,that, if accused thought decedent or his brother were renewing the fight accused previously had with the other person, killing was manslaughter, was not reversible error, as decedent had not participated in the previous difficulty.

Appeal from Criminal District Court, Williamson County; James R. Hamilton, Judge.

Alvin Townsley was convicted for murder, and he appeals. Affirmed.

·J. F. Taulbee and W. H. Nunn, both of Georgetown, for appellant.

Dan Moody, Dist. Atty., of Austin, Wilcox & Graves, of Georgetown, Tom Garrard, State's Atty., of Lubbock, and Grover C. Morris, Asst. State's Atty., of Austin, for the State.

HAWKINS, J. On the 17th day of October, 1924, appellant shot with a pistol and killed C. W. (Charley) Fields. A conviction for murder resulted, punishment being assessed at life imprisonment in the penitentiary.

[1] Appellant urged that the venire be quashed, claiming it was not drawn in "open court" as required by article 592, C. C. P. (1925 ·Revision), art. 660a, Vernon's 1922. Supp. The article in question provides that "the clerk, in the presence of the judge, in open court, shall draw" the venire. In the present instance the court was not adjourned, recessed or in vacation, but when the venire was to be drawn, the judge went to the clerk's office in the courthouse about 30 feet from the judge's bench in the courtroom and in the clerk's ,office the clerk drew the venire in the presence of the judge. Section 7, art. 5, Constitution of Texas, provides that the district judges shall hold the terms of their court at the county seat of, the various counties. To the same effect is article 1396, Vernon's C. ·S. (article 1602, 1925 Rev. C. S.). Article 1397, Vernon's C. S. (article 1603, 1925 Rev. C. S.), requires the commissioners' court to provide a courthouse for the county. The proceedings of court usually occur in the particular room set apart by the commissioners for holding the sessions of court in, but we think if the court is actually in session, that is "open" as distinguished from vacation, recess, or · adjournment, an act of the court would not be invalid solely because done in the clerk's office in the courthouse, and not in the courtroom. Atwood v. State, 257 S. W. 563, 96 Tex. Cr. R. 249; Block v. Kearney, 64 P. 267, 6 Cal. Unrep. 660; Reed v. State, 46 N. E. 135, 147 Ind. 41; Courtney v. State, 32 N. E. 335, 5 Ind. App. 356; Scott v. State, 32 So. 623, 133 Ala. 112; Smith, Adm'r, v. Jones et al., 23 La. 43. From Reed v. State, supra, we quote:

"If in doing so [making orders in place other than the regular courtroom] no legal or constitutional right of the accused is infringed, and it is manifest that no substantial injury has been done, error is not available if it exists."

[2, 3] Bills of exception 18, 19, 20, 21, 22, 23, and 24 set out a question claimed to have been propounded by the district ̦attorney on cross-examination to certain named witnesses who had testified for appellant that his general reputation as a peaceable, law-abiding citizen was good. The question objected to is identical in the several bills. If an answer was given by any of the witnesses the bills fail to show it. The objection, however, appears to be to the form of the question upon various grounds, one being that it was an effort on the part of the state to show other offenses against appellant than the one on trial; another, that the question was not based upon any fact. There is no certification of the truth of the ̇matters contained in the objection, but they appear in the bills as grounds of objection only. This is not sufficient. See many authorities collated under section 209, Branch's Ann. P. C. In qualifying these bills the learned trial judge calls

attention to the fact that each bill embodies identically the same question as having been asked of seven different witnesses, and says that in this respect the bills are not correct. He further explains the bill by saying that appellant offered a number of witnesses who testified that prior to the time of the homicide which was the basis of this prosecution appellant enjoyed a good reputation as a peaceable, law-abiding citizen, and that the state offered equally as many who testified to the contrary; that in the trial evidence came into the case of a number of difficulties in which appellant had been involved, that the state asked no question about the details of these difficulties, and that none of the details were brought into evidence except as appellant first went into the matter of detail; that the question asked by the district attorney of the various witnesses was as to what difficulty of appellant, if any, the particular character witness had heard, and he then propounded to such witness the question as to whether he would say appellant's reputation as a peaceable, law-abiding citizen was good notwithstanding he had heard of such prior difficulty in which appellant had been engaged.

A witness to the good character of accused may be asked upon cross-examination whether he had heard rumors of particular and specific charges or acts of accused inconsistent with the character he was called to prove, not to establish the truth of such charges, but to test his credibility and enable the jury to weigh his evidence. Underhill's Cr. Ev. (3d Ed.) § 82; Johnson v. State, 241 S. W. 484, 91 Tex. Cr. R. 582; Rose v. State, 244 S. W. 1009, 92 Tex. Cr. R. 560; Williamson v. State, 167 S. W. 360, 74 Tex. Cr. R. 289; Blue v. State, 106 S. W. 1157, 52 Tex. Cr. R. 324. Other authorities are listed under section 184, p. 117, Branch's Ann. Tex. P. C. Under the court's explanation no error is shown by the bills under discussion.

[4] Witnesses testified that after the shooting was over J. D. (John) Fields said to witness: "My God, isn't it awful! He has killed poor Charley, the best friend I ever had." This evidence went before the jury without objection. Later appellant requested its withdrawal on the ground that it was not res gestæ. The testimony shows that appellant assaulted J. D. Fields, striking him over the head with a pistol so violently that blood flowed freely, and then shot and killed C. W. (Charley) Fields; that John Fields fled from the scene, and was pursued by appellant, who fired one or more shots at him; that John Fields had his hands raised above his head as he was fleeing; that he would wipe the blood from his face and again raise his hands. It was under these conditions the statement was made, perhaps not more than a minute after the last shots were fired, and within from 30 to 60 feet of the place of the killing. It was the spontaneous outcry of a participant, and clearly res gestæ. If part was immaterial it does not appear harmful.

[5] Complaint is made in bill No. 6 of certain cross-examination of appellant's witness Cæsar Rogers as being argumentative in character. The killing occurred about 4:30 in the afternoon. The state had introduced testimony to the effect that at the time of the killing appellant was under the influence of liquor. Rogers had testified that between 2:30 and 3:30 he was with appellant, and did not at that time detect the odor of liquor on his breath. On cross-examination counsel for the state asked him if appellant did not have time to become intoxicated between 3:30 and the time of the killing. The qualification to the bill recites that witness' answer to this question was unintelligible and manifested an unfriendly disposition towards the state; that the district attorney then inquired if appellant had a pistol at the time witness claimed to have been with him, to which witness replied he did not know. The district attorney then asked him, if later a man was killed by appellant with a pistol at a time, when the odor of liquor was detected on his breath, if it was not a fact that appellant must have secured the pistol and the liquor after the witness saw him, which the witness answered in the affirmative. The last question may have been somewhat argumentative, but we think the bill presents no such serious matter as calls for a reversal.

[6] Bill of exception No. 8, taken in connection with the explanation thereto, shows that witness Shell had testified as a character witness for appellant that his general reputation as a peaceable, law-abiding citizen was good. Upon cross-examination it developed that he had contributed money to employ attorneys to represent accused. The witness was then asked by the district attorney if he had heard or knew of prior difficulties in which appellant had been involved. It had already appeared in the trial that appellant had shot a Dr. Price. Shell was asked by the district attorney if, notwithstanding he had heard of the difficulty between appellant and Dr. Price, he would still say appellant enjoyed a good reputation as a peaceable, law-abiding citizen. Witness did not answer the question, but said Dr. Price was a much larger man than appellant. In response to this statement the district attorney asked him if the 45-caliber pistol used by appellant did not overcome the difference in weight, the evidence having shown that appellant used a 45-caliber pistol. When objection was interposed to the last question the district attorney did not insist upon an answer, but abandoned the question, and it was not answered. This bill, in connection with the qualification, presents no error.

[7] We have given the substance of bills of exception 6 and 8. Very similar in character are bills 7, 9, 10, 11, 12, 13, 14, and 25. They all complain of the cross-examination of ap-

pellant or some of his witnesses. The court's qualification becomes a part of the bill. We do not regard them as of sufficient moment to demand separate discussion. In some instances questions asked by the district attorney were abandoned when objection was interposed, in others objections were sustained and the jury instructed to disregard the question. We regard none of the matters of such grave consequence as would demand a reversal. Neither do we believe they show a persistent or studied purpose on the district attorney's part to prejudice appellant's case by asking improper questions, as contended by appellant, and therefore application of the rule invoked by appellant in such a case is not called for.

[8] Complaint is made in bill No. 15 of the action of the court in permitting the state to use one Sharp as a witness, upon the ground that the "rule" had been invoked and Sharp had been in the courtroom and heard some of the other witnesses testify. An investigation of the matter developed that Sharp had not been summoned as a witness. It appears not to have been known to either party that he knew any facts relative to the case until some witness on a previous day had mentioned his name, whereupon appellant's counsel remarked that he desired Sharp as a witness. He was summoned and appeared in court the next morning. The bill reveals no abuse of discretion upon the part of the court in permitting the testimony of said witness to go to the jury.

[9, 10] By bill of exception 16 complaint is made that, after the state had rested its case and appellant had introduced his testimony and rested, the state called one Mills as a witness, the objection being that Mills' testimony was not in rebuttal. The strict rule with reference to direct and rebuttal testimony is not enforced in this state in the trial of criminal cases, and even if the testimony of Mills had not been in rebuttal the bill would have presented no error. However, the testimony of Mills appears to have been in direct rebuttal of appellant's contention that immediately preceding the shooting of C. W. Fields he received a blow back of the ear from one of the Fields brothers, which blow caused him pain and raised a considerable knot. Mills testified that he witnessed the fight between appellant and Bright some time prior to the homicide, and saw Bright deliver a blow which struck appellant behind the ear, and saw the knot on the back of appellant's head immediately after this fight, and before the killing. It occurs to us this was directly in rebuttal of appellant's claim that he received the blow from one of the Fields brothers.

[11, 12] On the day of the homicide a football game was being played at Georgetown between the high school team of that place and the high school team of Giddings. J. D. and C. W. Fields lived at Giddings, and were present at the game as spectators, C. W. Fields having a son on the Giddings team. Both of the Fieldses were in the grandstand. Bright, a young man 22 years of age, was coach of the Giddings team. During the progress of the game a fist fight occurred between Bright and appellant. The state's evidence shows that appellant was the aggressor and wholly to blame for this encounter. Appellant admits passing the first blow, but claims it was because of a vile epithet used towards him by Bright. The latter denies the use of any such epithet, and others present heard none used by Bright. Parties connected with or in sympathy with the Georgetown team importuned appellant not to have further trouble, as it would result in the forfeiture of the game to Giddings. Appellant promised to have no further trouble during the game, but said they would settle the fight after the game was over. Neither J. D. nor C. W. Fields was present when the encounter between Bright and appellant occurred, but, seeing the commotion, they left the grand stand and went to ascertain the cause of the disturbance, C. W. Fields arriving before J. D. Fields. The latter says he thought the trouble was between some of the players on the teams was what induced him to go and make inquiry. When C. W. Fields arrived at the place where the fight occurred he asked what the trouble was about. The state's witnesses testify that appellant told him it was none of his "G—— d—— business"; that deceased then said he was only interested in knowing what caused the disturbance; that appellant again replied in effect that it was none of his business, and that Fields could not make him (appellant) tell; that Fields replied, he guessed he could, but was not there for that purpose; that he was only desirous of knowing what had caused the fight. About this time J. D. Fields walked up, and remarked that they were not there to have any trouble, but only came to have a good time at the game. Appellant's version of the latter part of this statement is that J. D. Fields said, "Not let's have any trouble; we will see him later." A few minutes after the fight between Bright and appellant the latter left the football field, saying to a witness as he passed, "Stay with me, boys, and I will whip the whole damn bunch." He went to town, secured a pistol, and returned, being gone perhaps 10 or 15 minutes. As he got out of his car near one of the gates to the football ground the Fields brothers left the grounds by this same gate. J. D. Fields was walking a few feet in advance of his brother. Appellant struck J. D. Fields over the head with his six-shooter, knocking him to his knees, and then shot and killed C. W. Fields. It was appellant's contention that one of the Fields brothers said, "There he is now," that both advanced on him, and one struck him; that from their conduct he thought his life was in danger. On the other

hand, the state's evidence is that neither J. D. Fields nor deceased did or said anything to appellant.

Under this state of the record it was appellant's contention that upon the issue of manslaughter the court should not have charged that the provocation must arise at the time of the killing, and not be the result of a former provocation, or of a provocation given by a person other than the party killed. In this connection he requested two special charges to the effect that, if it appeared to appellant that the Fields brothers or either of them was renewing the difficulty appellant had theretofore engaged in with Bright, and that in the difficulty with Bright appellant had received a blow which caused him pain, said injury so received in the difficulty with Bright would in law be deemed adequate cause to reduce the killing of C. W. Fields to manslaughter. In support of this proposition appellant refers us to Stacy v. State, 86 S. W. 327, 48 Tex. Cr. R. 95; Brown v. State, 112 S. W. 80, 54 Tex. Cr. R. 121; Garcia v. State, 156 S. W. 939, 70 Tex. Cr. R. 485; House v. State, 171 S. W. 206, 75 Tex. Cr. R. 338. An examination of the authorities referred to all reveal that in the prior difficulty which had occurred between accused and other parties the party killed was also present and in some way participated; therefore the provocation could legitimately be construed as provocation given by the party killed. The rule is very clearly stated by Judge Davidson in House v. State, supra, in the following language:

"We understand the rule to be that, where there is evidence that some other person or persons acted in conjunction with deceased in giving provocations, it is error for the court to prevent a consideration by the jury of the provocations given by some other than the party killed."

The application of this rule is not called for by the facts of the present case. It is apparent from the record that neither of the Fields brothers was present or had anything to do with the fight between appellant and Bright. If either of them expressed an opinion relative to who was to blame the record does not reveal it. Their appearance upon the scene after it was over was simply to ascertain what had caused the disturbance. Even if J. D. Fields had said, "We will see him later," as claimed by appellant, all the evidence shows that in the entire conversation both of the Fieldses disclaimed any purpose of desiring to have trouble. It is in testimony that during the conversation between the Fieldses and appellant nothing in their conduct evinced any tendency or desire to have a fight or trouble. We think the evidence does not raise the issue sought to be submitted in the special charges refused and that the court committed no error in this

respect. The jury was instructed that, although the law provides that the provocation must arise at the time of the killing, yet in determining the adequacy of such provocation it was the jury's duty to consider all the facts and circumstances in evidence. This permitted the jury to consider all the facts before them incident to the former difficulty with Bright upon the general issue of manslaughter.

Bills of exception 30, 31, and 32 complain of certain argument of counsel representing the state. We think a detailed discussion not called for. None of the argument appears to be of that character which demands a reversal.

The judgment is affirmed.

On Motion for Rehearing.

MORROW, P. J. Appellant, by his affidavit in writing, has signified his desire to withdraw his motion for rehearing in the above-styled cause. We learn from the counsel for the appellant that they make no objection to the granting of the request. The request to withdraw the motion for rehearing is therefore granted, and mandate will issue upon the original judgment of affirmance.